72 U.S. 772 (____)
5 Wall. 772
SUPERVISORS
v.
SCHENCK.
Supreme Court of United States.

*774 Mr. Cook, for the supervisors of the County of Marshall, plaintiff in error.
Mr. S.W. Fuller, contra.
*776 Mr. Justice CLIFFORD delivered the opinion of the court.
Counties in the State of Illinois may purchase or subscribe for shares in the capital stock of any railroad company incorporated or organized under any law of the State, in any sum not exceeding one hundred thousand dollars.
*777 Pursuant to that law the corporation defendants, on the twelfth day of September, 1856, issued, as alleged in the first count of the declaration, thirty bonds, each for one thousand dollars, payable to the Western Air-Line Railroad Company, or order, in twenty years from date, with interest coupons annexed, stipulating for the payment to bearer of interest annually, at the rate of six per centum per annum. Same count alleged that the plaintiff, on the first day of July, 1857, became the legal holder of those bonds, with the coupons thereto attached, by due indorsement and delivery.
Present suit, which was an action of assumpsit, was brought by the plaintiff to recover one year's interest on those bonds, which fell due on the twelfth day of September, 1865, nine years after the bonds were issued and eight years after the plaintiff became the holder of the same, for value, and in the usual course of business.
The authority of counties to purchase or subscribe for such shares and issue such bonds is subject to certain conditions or regulations, one of which is, that a majority of the qualified voters of the county must first vote for such subscription or purchase. Provision is also made for proper notice to the electors of the time and place of the meeting for that purpose, and the requirement is, that the notice must specify the company in which stock is proposed to be subscribed, the amount proposed to be taken, the time the bonds are to run, and the rate of interest the bonds are to bear.
Defendants appeared and filed a special plea, and rested their defence entirely upon the allegations of that plea. Substance of the defence was, that the bonds were issued without authority, and were invalid, because the election to procure the consent of a majority of the qualified voters of the county was ordered to be held by the county court of the county, and not by the board of supervisors of the county, as required by law; but they admitted, among other things, that the election was properly conducted, and that the returns were duly made, and that the proceedings, in all other respects, were regular and correct.
*778 Replication of the plaintiff alleged that the bonds and coupons were executed and delivered in payment of a like number of shares of the stock in the railroad company; that the shares of the stock were received by the defendants in payment for the bonds, and that the defendants have ever since held and owned the same, and by virtue thereof have participated in the election of the officers of the company, and in all other benefits and advantages attending such ownership. He also alleged that the transfer of the bonds to him was for a valuable consideration, and without notice of any defect in the preliminary proceedings, and that the defendants, having paid the interest annually accruing on the bonds to the amount of six thousand dollars, have thereby ratified and confirmed the same as binding and obligatory.
Defendants demurred, and the plaintiff joined in demurrer. Circuit Court overruled the demurrer, and rendered judgment for the plaintiff, and the defendants removed the cause into this court.
I. Bonds to the amount of one hundred thousand dollars were issued by the defendants, of which the bonds specified in the declaration were a part, and the railroad company, at the same time, transferred stock to them in the same amount. Decision of the Circuit Court in overruling the demurrer is the only error assigned in the record, and the single question presented in the case is, whether the bonds specified in the declaration, and which were indorsed and delivered before maturity, are void in the hands of the plaintiff, who is the holder for value, and without notice of any defect in the proceedings, because the order for the election in which the majority of the qualified voters of the county voted to subscribe for the stock of the railroad company and purchase the shares, was made by the county court, and not by the supervisors of the county.
Before examining that question it may be well to mention some of the further admissions of the defendants, as exhibited in their special plea. They therein admit, in express terms, that the notices of the election were duly published, that the election was held, that the required number of qualified *779 votes were given on the fifth day of April, 1853, and that the board of supervisors of the county, on the fourteenth day of November, 1854, made an order, and recorded it, that the county do subscribe one hundred thousand dollars to the stock of the company named in the bonds; and that the board, on the same day, passed another order to empower the chairman of the board to make the subscription, and that he made the subscription and purchased the shares on the following day.
These admissions of the plea, or answer, are followed by others of equal importance, to wit: That the chairman and clerk of the board did afterwards issue, by the order of the board, the bonds of the county, as alleged in the declaration, and that the same were duly delivered to the railroad company, in payment for a like number of the stock shares of the company.
Looking at these several admissions, it is obvious that the sole objection to the validity of the bonds, even inter partes, arises from the fact alleged in the plea, and not directly denied in the replication, that the order for the election was passed by the county court of the county, and not by the board of supervisors. Express authority is conferred upon counties in that State to subscribe for shares, or purchase the same, in any railroad company incorporated and organized under the laws of the State, in any amount not exceeding the sum already specified, and the Supreme Court of the State have settled the doctrine in a series of decisions that the law of the State conferring such authority is constitutional and valid[*]
Power in the county, therefore, to make the subscription, purchase the shares, and issue the bonds in this case, if the proceedings were regular, is placed beyond all question. Support to that proposition is hardly necessary, as it is settled by the decisions of this court, as well as by the highest judicial authority of the State, and stands confessed.[]
*780 Notices of the time and place of the election, in due form of law, were duly published, and the meeting was formally held at the time appointed, and at the usual place for such elections. Returns of the election were duly made, and the admission of the plea warrants the conclusion that they show that a majority of the qualified voters voted for the subscription. Compliance, therefore, is shown with every provision of the original law which authorized counties to make such subscriptions and purchase shares in the capital stock of railroad companies. Orders for such elections were required under that law to be made by the county court of the proper county, and the provision was that the stock so subscribed or purchased should be under the control of the county court making such subscription or purchase, in all respects, as stock owned by individuals.[*]
Prior to the date of the order for the election in this case, however, the township organization law was passed, which provides that the powers of a county as a body politic can only be exercised by the board of supervisors thereof, or in pursuance of a resolution by them adopted.[]
None of the other provisions of the prior law are repealed, nor is there any change in the regulations, except that the order for the election is required to be made by the board of supervisors, and not by the county court of the county. The objection is that the order in this case was made as under the prior law, but the notices, in regular form, were duly published, and the election was held, and the board of supervisors of the county ratified the proceedings by subscribing for the stock, issuing the bonds, accepting the shares in payment of the same, and by participating ever after in the election of the officers of the company and in the management of its affairs, as owners to that extent of the stock of the company.
Throughout they appear to have adopted the order and the results of the election as rightfully authorized acts, and for the period of ten years the county has held the stock as *781 their own property, and have voluntarily enjoyed all the benefits of absolute legal ownership, without any complaint or any attempt to enjoin the proceedings.
Preliminary proceedings looking to such a subscription by a municipal corporation may often be enjoined for defects or irregularities before the contract is perfected, in cases where the corporation will be held to be forever concluded, if they remain silent and suffer the shares to be purchased, the bonds to be issued, and the securities to be exchanged. Nothing of the kind was attempted in this case, and the defendants have never rescinded, or attempted to rescind, the contract, and have never returned, or offered to return, the evidences of their ownership of the shares in the stock of the company, but have annually acknowledged the validity of the bonds by voting taxes for the payment of the accruing interest, and have actually paid the same to the amount of six thousand dollars.
Judge Story said there was no maxim, where it does not prejudice the rights of strangers, better settled in reason and law than Omnis ratihabitio retrotrahitur et mandato priori æquiparatur, and it is equally well settled that the maxim is as applicable to corporations in matters of simple contract as to other contracting parties. Questions of ratification most frequently arise in respect to the acts or omissions of agents, but the general rule is the same in all cases where the act done was one which it was competent for the party attempted to be charged to do. When the principal, upon a full knowledge of all the circumstances of the case, deliberately ratifies the acts, doings, or omissions of his agent, he will be bound thereby as fully, to all intents and purposes, as if he had originally given him direct authority in the premises, to the extent which such acts, doings, or omissions reach.[*]
Ratification is inoperative if the party attempted to be charged was not competent to make the contract in question when the same was made, nor when the supposed acts *782 of ratification were performed, or if the contract was illegal, immoral, or against public policy. Like an individual, a corporation may ratify the acts of its agents done in excess of authority, and such ratification may, in many cases, be inferred from acquiescence in those acts, as well as from express adoption.[*] Such ratification may be by express consent, or by acts and conduct of the principal inconsistent with any other hypothesis than that he approved, and intended to adopt what had been done in his name; and it was held in Peterson v. The Mayor of New York,[] that the principle is as applicable to corporations as to individuals. Where the officers of the corporation openly exercise powers affecting the interests of third persons, which presupposes a delegated authority for the purpose, and other corporate acts subsequently performed show that the corporation must have contemplated the legal existence of such authority, the acts of such officers will be deemed rightful, and the delegated authority will be presumed.[]
All of the acts of the board of supervisors of the county in making the subscription, purchasing the shares, issuing the bonds, and exchanging the securities, appear to have been open and well known to the corporation, and yet they constantly suffered themselves to be represented in the choice of officers and in the management of all the affairs of the railroad company, and have voluntarily voted taxes for the payment of the yearly interest on the bonds, and actually paid the same, as admitted in the special plea.
Examined in the light of those suggestions, it would be difficult to imagine a case where the rule that a subsequent ratification is as good as a previous authority can be more justly applicable than in the case under consideration.[§] So, where shares in a railroad company were received by the officers of a county in exchange for their bonds, and *783 were never returned, and the proper officers of the county voted for directors at two elections, and the supervisors paid two annual instalments of interest, the Supreme Court of Illinois held that those acts, unexplained, were as satisfactory evidence of a design to ratify the issue of the bonds as if it had been done by an order of the supervisors.[*]
Direct decision to the same effect was also made by that court in Keithsburg v. Frick,[] which is the latest reported decision upon the subject. Views of the court in that case were that the acts of the supervisors in issuing the bonds and putting them upon the market, and by levying taxes and paying interest for a series of years, estopped the county from setting up any irregularity in their issue, and this court has, in repeated instances, affirmed the same doctrine.
Leading case in this court is that of Knox County v. Aspinwall,[] which was very fully considered by the court. Alleged defect in that case was that the notices of the election, as required by law, had not been given in any form, but the decision was that the question as to the sufficiency of the notice, and the ascertainment of the fact whether the majority of votes had been cast in favor of the subscription, was necessarily left to the inquiry and judgment of the county board, as no other tribunal was provided for the purpose. Intimation of the court was that their decision might not be conclusive in a direct proceeding to inquire into the facts previously to the execution of the power, and before the rights and interests of third parties had attached. But the court held that after the authority had been executed, the stock subscribed, the bonds issued, and in the hands of innocent holders, it was too late, even in a direct proceeding, to call the power in question; much less, say the court, can it be called in question to the prejudice of a bonâ fide holder of the bonds in a collateral way.
Similar views were expressed by this court in the case of Bissel v. Jeffersonville,[§] and in many others referred to by the *784 plaintiff.[*] When a corporation has power, under any circumstances, to issue negotiable securities, the decision of this court is that the bonâ fide holder has a right to presume they were issued under the circumstances which give the requisite authority, and they are no more liable to be impeached for any infirmity in the hands of such a holder than any other commercial paper.[]
State courts in other States have decided in the same way, as well where the controversy was between the original parties as in favor of indorsers and holders, without notice of the alleged defect.[]
Argument of the defendants proceeds upon the ground that if they can show that the order for the election emanated from the wrong source, the plaintiff, although an innocent holder for value, cannot recover; but it is clear that in a case like the present, where the power to issue the bonds was fully vested in the corporation, the proposition cannot be sustained. On the contrary, it is settled law that a negotiable security of a corporation, which upon its face appears to have been duly issued by such corporation, and in conformity with the provisions of its charter, is valid in the hands of a bonâ fide holder thereof, without notice, although such security was in point of fact issued for a purpose, and at a place not authorized by the charter of the corporation.[§]
Attention is drawn to the fact that in a recent case not yet reported, the Supreme Court of the State have held that these bonds are void, even in the hands of an innocent holder, but inasmuch as the power to issue the bonds was fully conferred by law, the question of their validity in the hands of innocent holders, without notice, is a question of commercial law where the State adjudications, although entitled *785 to great respect, do not furnish the rule of decision in this court.[*]
Prior decisions of the State court were in accordance with the decisions of this court, and as those decisions were supposed to be correct expositions of the law of the State at the period when these bonds were issued, the latter adjudications cannot control the judgment in this case.
JUDGMENT AFFIRMED, WITH COSTS.
NOTES
[*] 2 Statutes, 1072; Prettyman v. Tazewell, 19 Illinois, 406; Johnson v. Stark Co., 24 Id. 75; Butler v. Dunham, 27 Id. 474.
[] Rogers v. Burlington, 3 Wallace, 663.
[*] 2 Statutes, 1072.
[] Id. 1146.
[*] Story on Agency, ed. 1863, § 239; Fleckner v. United States Bank, 8 Wheaton, 363; N.Y. & N.H.R.R. Co. v. Schuyler et al., 34 New York, 49.
[*] Hoyt v. Thompson, 19 New York, 218.
[] 17 Id. 453.
[] Bank of United States v. Dandridge, 12 Wheaton, 70.
[§] Mills v. Gleason, 11 Wisconsin, 490; Angell & Ames on Corporations 8th ed., § 237, 304; 2 Kent's Commentaries, 11th ed. 348; Bissel v. Railroad, 22 New York, 264.
[*] Johnson v. Stark Co., 24 Illinois, 90.
[] 34 Id. 421.
[] 21 Howard, 544.
[§] 24 Id. 299
[*] Moran v. Miami Co., 2 Black, 725.
[] Gelpcke v. Dubuque, 1 Wallace, 203.
[] Savings Co. v New London, 29 Connecticut, 174; Tash et al. v. Adams, 10 Cushing, 252.
[§] Stoney v. Life Ins. Co., 11 Paige Ch., 635; F. & M. Bank v. B. & D. Bank, 16 New York, 129; Goodman v. Simonds, 20 Howard, 365; Thompson v. Lee Co., 3 Wallace, 327.
[*] Swift v. Tyson, 16 Peters, 18.