THE COUNTY OF JEFFERSON, PLAINTIFF IN ERROR, vs. B. C. LEWIS & SONS, DEFENDANTS IN ERROR.

1. In declaring against a county or municipal corporation which has no general authority to issue bonds, in a suit upon bonds issued under a special act of the Legislature, (to wit: the 22d section of

Jefferson County v. B. C. Lewis & Sons—Syllabus.

the Internal Improvement act of 1855, which does not designate any particular county,) the power to issue the bonds must appear by distinct averment of the special authority conferring the right, unless such special authority appears by the bond annexed to the declaration.

2. When upon a motion to strike out a plea for want of sufficient verification, the court in deciding the motion expresses an opinion as to the effect of the verification upon a question which may arise upon the trial, an exception does not lie to such opinion, it being not material upon the motion to strike out, though it may be material when evidence is tendered.

3. The question, whether a person drawn as a juror is sufficiently intelligent to sit in a case, may be determined by the court in the exercise of sound discretion.

4. In a suit against a county upon its bonds, when the validity of the bonds is in question, a holder of similar bonds may be challenged for cause when drawn as a juror. Being interested in the question to be tried is cause of bias as a matter of law.

5. Under the Constitution of this State in force in 1857, the Judge of Probate was lawfully made a County Commissioner by act of the Legislature.

6. Bonds of a county did not, upon their face, recite the authority of law under which they were issued. The record of the proceedings of the Board at the time the bonds were ordered to be issued recited : "Be it known that after public notice duly given the question was submitted to a vote of the legal voters of Jefferson county, on the 7th of May last, whether this county should subscribe for stock in the Pensacola and Georgia Railroad Company, and it was decided in favor of such subscription by a majority of 278 votes out of 297, being all the votes polled. Now, therefore, the Board of County Commissioners of Jefferson county, by virtue of the said vote and of the power and authority on them conferred by 'an act to provide for and encourage a liberal system of Internal Improvements,' approved 6th January, 1855, have determined to subscribe," &c.: *Held*, (the Pen. & Ga. R. R. being one of the roads contemplated in the act,) that as against a *bona fide* holder of the bonds, this recital in the record of their proceedings by the Commissioners estopped the county to deny that the election was duly held according to law and that the Board subscribed for stock as stated in the record.

7. The rate of interest contracted to be paid attends the contract un-

til the principal is paid or the contract extinguished, where the debtor has violated his agreement to pay by a certain day. Any other rule might make it profitable to violate contracts, a doctrine not conducive to commercial morality and integrity.

8. In 1857 counties had no official seal. The seal of the Judge of Probate or any other device in the form of a seal attached to a county bond was a good sealing.

Writ of Error to the Circuit Court for Jefferson county.

The following is a copy of one of the bonds sued on:

SUBSCRIPTION TO PEN. & GEO. R. R. CO., BY VOTE OF COUNTY.

STATE OF FLORIDA, COUNTY OF JEFFERSON.

$500.                                                    No. 228.

· The County of Jefferson hereby acknowledges itself indebted to the bearer in the sum of five hundred dollars, to be paid at the Court-house in the town of Monticello, on the first day of January, in the year of our Lord one thousand, eight hundred and seventy-seven, with interest thereon at the rate of eight per cent. per annum from the first day of January, 1857, payable annually, on presenting the corresponding coupon hereunto annexed, signed by the President of the Board of County Commissioners of said county, for the payment whereof the faith and resources of said county are hereby pledged.

IN WITNESS WHEREOF, the Judge of Probate, who is ex-officio President of the Board of County Commissioners for said county, has hereunto set his hand and affixed the impress of his seal of office, this twenty-fourth day of January, in the year of our Lord one thousand eight hundred and fifty-seven.

THOMAS J. CHASE,

Judge of Probate and ex-officio President of the Board of County Commissioners.

Attest : SAMUEL PULESTON,
                County Treasurer.

Issued in pursuance of an order of the Board of County Commissioners passed on the 10th day of January, A. D. 1857.

CONVERTIBLE INTO STOCK OF THE COMPANY.

The affidavit to the pleas, the "motion to strike," and the order thereupon, are as follows:

Before the undersigned Clerk of the Circuit Court in and

for said county came Charles T. Carroll, one of the County Commissioners of Jefferson county, and Chairman of the Board, who being duly sworn says that he has been duly appointed agent of the defendant for the purpose of this suit; that the foregoing pleas have been adopted by the County Commissioners acting for said county in support of their defence to plaintiff's action; that he verily believes that the said pleas are proper pleas to present their defence; that they are offered in good faith and not for the purpose of delay; that the facts upon which they rest are true except such as are stated upon information and belief, and as to such facts he verily believes the same to be true after careful inquiry and examination made by himself and the other County Commissioners of said county.

C. T. CARROLL,
Chairman Board County Commissioners.

Sworn to and subscribed before me this 7th January, 1884.                    W. C. BIRD,
Clerk Jefferson Circuit Court.

The plaintiffs in the above entitled suit move the court to strike out the pleas filed therein by the defendant because said pleas are not sworn to in the manner required by the statute and rules of court in and for such cases made and provided.—March 6th, 1884.

HENDERSON & MALONE,
Attorneys for Plaintiffs.

Motion overruled, but the court is of the opinion that the verification of the pleas is not sufficient to require the plaintiffs to prove the execution of the bonds mentioned in the declaration, and rules and orders that the plaintiffs shall be not required to make due proof on the trial.—March 6th, 1884.

The other facts are stated in the opinion.

*S. Pasco* for Appellant.

The defendants in appeal brought suit at September Rule Day, 1883, against Jefferson county to recover $50,000 damages upon certain alleged obligations of the county, 77 in number, some in the sum of $500, others in the sum of $100 each. It was not alleged in the declaration that these bonds were issued by statutory authority or by a vote of the people. Copies of the papers sued upon were filed with the declaration, but they contained no recital of any authority for their issue. They purported to be signed by the Judge of Probate of the county and to be attested by the County Treasurer, and were sealed with the seal of the then Probate Court. The defendant below demurred to the declaration because of the absence of the allegations relating to legislative authority, but the demurrer was overruled and said defendant pleaded.

An effort was made to strike out the pleas upon the ground that the affidavit was insufficient. The motion was overruled, but the court included in its judgment upon the motion that the pleas as sworn to were not sufficient to throw the burden of proof upon the plaintiff below. Issue was joined, a jury was sworn and the trial proceeded ; before judgment 65 bonds were withdrawn from the suit, some before the trial commenced, others after the jury had been charged and because the charge was adverse to 'the class of bonds to which they belonged. Twelve bonds remained of the face value of $6,000, and judgment was rendered for this amount, and interest and costs. Time was allowed after adjournment of court to prepare a bill of exceptions, and it was in due time signed, including certain exceptions taken during the progress of the case to the action of the court in admitting and excluding jurors, in admitting and excluding testimony, in charging and refusing

to charge the jury upon certain questions of law and in certain other matters connected with the case, all which appear of record.

The case was afterwards brought to this court by writ of error, and the defendant in appeal has entered a voluntary appearance. The errors alleged against which plaintiff seeks relief are included in the assignment on file, and the attention of this honorable court is here directed to the same.

*1 and 2. As to Demurrer to Declaration.* A county cannot subscribe for stock in a public improvement, unless authorized to do so by legislative authority. The authority to issue bonds to raise funds for such improvements must be alleged in the declaration or appear upon the face of the bonds. It appears in neither declaration nor cause of action in the case at bar. Thompson vs. Lee Co., 3 Wallace, 327,330; Marsh vs. Fulton Co., 10 Wall.,676,682; Mayor vs. Ray, 19 Wallace, 475; Allen vs. Louisiana, 103 U. S., 80 ; Hennard vs. Cass Co., 3 Dillon, (C. Ct.) 147; Thayer vs. Montgomery Co., 3 Dillon, 389 ; McClure vs. Township of Oxford, 94 U. S., 429, 432.

*3 and 4. As to Verification of Pleas.* This action of the court seems to be based upon the idea that the affidavit to the pleas was in conformity with the later statute, the Constitution and rule of court, but that it did not satisfy the old statute. We are before the only tribunal that can declare the law upon this point. We think our verification is strong enough to cover the requirements of the statute of 1828. No form has ever been laid down by the judiciary or the Legislature. McClellan's Dig., 822, §38 ; Ib., 832, §85 ; Cons., art. 6, sec. 14, Rule of Ct. 15, p. 11.

*5 and 6. As to the Effect of the Educational Clause in our Jury Laws.* Stanley and Armstrong said in answer to questions upon their *voir dire* that they understood reading,

writing and arithmetic, and it is not doubted that they did. We claim that this was sufficient under the statute to qualify them. It is a curious fact that a jury thus rigidly selected failed to bring in a correct result, and that a *remittitur* had to be entered by the plaintiff below. 9th Session Acts, 1877, chap. 3010, §7.

*7 and 8. As to the Effect of the Interest of Jurors who own Bonds of the same Issues as those Sued upon, one of them being interested in a Suit actually pending in the same Court in which the same Issues must naturally arise.* These interested parties were declared to be competent jurors, and plaintiff in appeal was only able to keep them off the panel by exercising the right of peremptory challenge. And the right was exhausted when Mr. Bailey was excluded and the sixth juror was accepted by plaintiff in appeal under compulsion. Plummer vs. The People, 74 Ill., 361; Davis vs. Allen, 11 Pick., 466; Jeffries vs. Randall, 14 Mass., 205.

*9. As to the Admission of the Bonds in Evidence.* No sufficient basis had been laid for their introduction. They came in virtually under the ruling of the court referred to in 3 and 4. The plaintiffs below, as if in doubt about this ruling, produced some show of authority for the issue of bonds by the county and identified the handwriting of the signers of the bonds, but was this enough? They read an extract from the minutes of the Board of County Commissioners of Jefferson county which indicates that these bonds are claimed to be authorized by the I. I. Act, and we will examine them with reference thereto. 7th Session Acts, 1855, chap. 610, McClellan, 588.

Section 22 of the original act indicates the conditions which must exist and the several steps requisite to be taken before a county could issue bonds under this act. They are as follows:

(I.) A county was only authorized to issue bonds in aid

of an improvement designated in section 4 of said act as a part of I. I. plan, as there marked out.

(II.) The company seeking such aid must have complied with the essential requirements of the I. I. Act.

(III.) With a view to aid such a company, and none other, the County Commissioners had the right to submit to a vote of the legal voters of their county to be held and taken at such times and places, and in such a manner as they should appoint, whether or not stock should be subscribed and taken by the county in such company.

(IV.) If when the vote had been thus taken it should appear that a majority of the votes was in favor of such subscription the County Commissioners were authorized to take stock in such company to an amount, not to exceed half the cost of constructing the road through the county.

(V.) The Commissioners had authority to pay for such stock by the sale of county bonds.

(VI.) They had power to make the bonds payable at such times and places as they might deem proper and with interest at a rate not to exceed 10 per cent. per annum. The evidence submitted by the plaintiff below will be searched in vain to find such a basis as the above for the issue of the bonds in suit. There are no recitals in the bonds that such a basis for their issue existed. In addition to this the bonds produced are manifestly not such bonds as the declaration sets forth. We urge that they were unproperly admitted in evidence. It may be argued that some of the deficiencies of the case of defendant in appeal were afterwards supplied by the plaintiff in appeal. But as the plaintiff in appeal only put in its evidence under the rulings of the court which it had excepted to on every appropriate occasion, it ought not to be prejudiced by this action. The legal effect and importance of the above recited steps will be sufficiently discussed elsewhere

in this brief and we will not here refer to any authorities bearing upon that branch of the subject.

*10. As to excluding the results of another election held near the same time as that attempted to be held upon the bond question,* the statute required that it shall be first submitted to the vote of the legal voters of said county, city or town, to be held and taken at such times and places and in such a manner as such authorities (*i. e.,* in a county, the Board of County Commissioners,) respectively may appoint, whether or not stock shall be subscribed and taken. The County Commissioners never appointed a time or place for holding such an election, they never authorized the submission of the question to the legal voters of Jefferson county, they never set the machinery of the law in operation. But the Judge of Probate attached to the notice of a special election, held to choose Justices of the Peace and to fill some vacancies, one in the Board of County Commissioners, another in the delegation to the Assembly, an order to submit to the voters the question to authorize or not to authorize the Board of County Commissioners to issue bonds for one-half of the construction of the proposed railroad through said county, supposed to be about twenty miles, agreeable to an act of the General Assembly. Only 316 persons participated in this little election and we think it was pertinent to show, as we offered to do, that at the nearest election 530 voters participated.

*11 and 16. Relating to the general law of the case.* These errors will all be considered under a general discussion of the case as presented by the entire record, and our effort will be to show that the charge of the court to the jury, the verdict of the jury and the judgment rendered, were erroneous and that the merits of the case are with the plaintiff in appeal.

The defence to the bonds rested upon pleas one and two,

setting forth substantially that Jefferson county did not make the bonds, nor seal them, nor acknowledge an indebtedness to bearer, and that the plaintiffs' below were not damaged as alleged ; further, that the bonds were not issued under legislative authority, did not bind the county and that plaintiff below took them with notice of such defects. Mercer County vs. Hacket, 1 Wall., 83 ; Knox County vs. Aspinwall, 21 How., 545.

We recognize the doctrine as laid down by the Supreme Court of the United States in numerous decisions, that where the Legislature has authorized a county to issue bonds for a public purpose within the scope of its constitutional authority, and the county has substantially executed the power through its proper authorities, although there may have been irregularities in the execution, the bonds so issued are valid. And, if upon their face they import a full compliance with such a law the purchaser is not bound to look further, and if an officer is clothed with authority to certify a particular fact or decide a particular question his decision or certificate is final in the absence of fraud. Lynde vs. The County, 16 Wall., 6, 13.

We admit, too, that the statute giving certain public officers power to subscribe stock in the railroads, accepting and complying with the terms of the I. I. Act, was and is a constitutional statute ; this court has so decided. Cottén vs. Leon County, 6 Fla., 610.

But there is nothing in the record of this case to show that the Pen. & Ga. Railroad ever accepted the provisions of the I. I. Act; nothing to show that the County Commissionees of Jefferson county ever sought to ascertain the will of the people of Jefferson county as to subscribing to the stock of that company. The evidence gives us all that was done. The only preliminary action taken was without their authority, and by a judicial officer who could not dis-

charge any function pertaining to another department of the State Government. Const., 1845, Art. 1, §2; Ibid, §9; Session Acts, 1845, chap. 6, page 14; Hunt vs. Finegan, 11 Fla., 105; Adjourned Session Acts 1845, chapter 38, p. 84. The County Commissioners themselves were powerless to aid any road not embraced in the terms of the act. That officer ordered an election to determine whether or not to authorize the issue of bonds by the County Commissioners for one-half of the construction of " the proposed railroad." The people, according to the returns, voted on a different question—whether or not to authorize the County Commissioners to take stock in the contemplated railroad. The County Commissioners entered upon their minutes, and it is the first entry upon the subject, that the question was submitted, whether the county should subscribe for stock in the P. & G. R. R., and they nowhere state in their minutes, or in the bonds, that this was done at such times and places and in such a manner as they had appointed.

Time and place are of the very essence of an election and the evidence offered and rejected establishes beyond a doubt that but a small portion of the voters turned out at the bidding of the Judge of Probate. The requirements of the law must be complied with. The officers designated must do the work. While a mere defect in a notice would be disregarded as an irregularity, the failure to fix the time, place and manner of getting at the will of the people is a fundamental defect which all takers and holders of the bonds must take notice of and be bound by. So. Ottawa vs. Perkins, 94 U. S., 260 ; East Oakland vs. Skinner, 94 U. S., 255 ; Buchanan vs. Litchfield, 102 U. S., 278 ; Marsh vs. Fulton Co., 10 Wall., 67 ; Jarrolt vs. Moberly, 103 U. S., 580; Bates Co. vs. Winters, 97 U. S., 83 Harshman vs. Bates Co., 92 U. S., 569 ; Dixon Co. vs.

Field, 111 U. S., 83, 93; Cooley's Const. Lim., 602, 616; Barry vs. Lanch, 5 Col., 588; Secord vs. Foutch, 44 Mich, 89; State vs. Young, 4 Iowa, 561; I. N. and S. R. R. vs. Virden, 104 Ill., 339; Lanier vs. Padgett, 18 Fla., 842; State vs. Padgett, 19 Fla., 518; Carroll Co. vs. Smith, 111 U. S., 556, 561; School Dist. vs. Stone, 106 U. S., 183.

There is no recital in these bonds to estop anyone.

There is no allegation or proof that the bonds were sold as required by law; they were turned over, it appears, to the P. & G. R. R. Co., and by its officers sold at a discount. This was not in accordance with law. But even if the county had received money or other valuable consideration for them, that fact alone would not make the bonds good· Scipio vs. Wright, 101 U. S., 665.

Nor would the payment of interest by the county work an estoppel. The vote of the people, unless taken in accordance with legislative authority, cannot bind the county. The charge of the court shut off our defence upon this point. Loan Association vs. Topeka, 20 Wall., 655; Lewis vs. Shreveport, 108 U. S., 282; Allen vs. Louisiana, 103 U. S., 80; Bissell vs. Spring Valley Township, 110 U. S., 162, 169; Anthony vs. Jasper Co., 101 U. S., 693; Hoff vs. Jasper Co., 110 U. S., 53; McClure vs. Township of Oxford, 94 U. S., 429; Northern R. R. vs. Porter Township, 110 U. S., 608.

*17. The remaining error relates to the question of interest.* The bonds were issued at a time when the law fixed the rate of interest at six per cent. in the absence of a special contract. There was a special contract to pay eight per cent. only up to the maturity of the bonds, and after their maturity, we think it settled by the better class of authorities, that if the statute had remained unchanged, only six per cent. could have been claimed if, indeed, in such a case as this any interest could be collected. But a statute could

not change the rights of parties; the Legislature is power-less to vary a contract. This court has already decided that an act of the Legislature cannot reduce interest on existing contracts; then it cannot increase it. Thomp. Dig., 234; Fla. Stat., chap. 1483; chap. 1562; Bernhisel vs. Firman, 22 Wall., 160; Cromwell vs. Sac. Co., 96 U. S., 61; My-rick vs. Battle, 5 Fla., 345.

If our view on this point is sustained by the court, and the court declares the bonds valid, then the plaintiff in ap-peal is entitled to a credit for the amounts paid each year in excess of the legal interest, equal to two per cent. of the face value of each bond.

*John W. Malone* and *John A. Henderson* for Appellees.

As to 1 and 2 grounds of error assigned. The declara-tion was not defective. The authority to issue the bonds sued on is recited on face of bonds, " subscription to Pensa-cola and Georgia Railroad Co. by vote of the county," " convertible into stock of the company," and " issued in pursuance of an order of the Board of County Commission-ers, passed, &c." The order recited the title of the act of the Legislature of Florida, (sec. 22, *et seq.*, chap. 610,) au-thorizing the issue of the bonds for the construction of the said railroad, by the vote of the county, convertible into the stock of the company. It was not necessary to aver in the declaration the authority or power of the County Commis-sioners to issue the bonds. Myer's Fed. Dec., title *Bonds*, sec. 1781; Lincoln vs. Iron Works Co., 103 U. S., 412; 104 U. S., 586; Clements' Corp. Sec., p. 82; Smith vs. Tallapoosa Co., 2 Woods, (U. S. C. C.) 574; My. Fed. Dec. Bonds, sec. 1779.

As to the 3 and 4 grounds of error assigned. The court did not strike out the pleas of defendant, and the plaintiffs

proved .the execution of the bonds sued on before placing them before the jury.

As to the 5 and 6 grounds of error assigned. By sec. 7, chap. 3010, the Judge presiding at the trial was authorized to determine whether the jurors referred to had such knowledge of reading, writing and arithmetic, or either, as was necessary to enable the jurors to understand the evidence offered on the trial. McClellan's Dig., page 446, sec. 9. This was a discretion which the Judge properly exercised, and is not reviewable by the appellate court.

As to 7 and 8 grounds of error assigned. It nowhere appears that the appellant was prejudiced by the rulings of the court as to the competency, as jurors, of John Finlayson or E. B. Bailey, as neither were taken on the jury; but a jury was empanelled of qualified jurors, accepted by both parties. 2 Gra. & Wat. on New Trials, 192, 193, 286–7.

As to 9th ground of error assigned. Upon proving the execution of the bonds, and the payment of interest for twenty-three years by the defendant on the bonds, the plaintiff was entitled to have them considered in evidence before the jury. Co. of Clay vs. Soc. for Savings, 104 U. S., 579 : M. Fed. Dec., Bonds, Sec. 1023 ; Supervisors vs. Schenck, 5 Wall., 772; Myer's Fed. Dec., Bonds, 1053, 1054, 1463.

As to 10th ground of error assigned. The proffered paper writings were wholly irrelevant. Myer's Fed. Dec., Bonds, sec. 1064, 902; Co. of Cass vs. Johnston, 95 U. S., 360.

As to 11th ground of error assigned. The court's charge embraced proper instructions on all the issues; the instructions asked for by the defendant and refused by the court were abstract propositions of law not pertinent to the issues, and irrelevant to the case and were properly refused. Hil-

liard on New Trials, pp. 211, 265, §10 ; Ib., pp. 240, 305, §58 ; Gra. & Wat. on New Trials, 791.

As to the 12th ground of error assigned. The motion for a new trial was properly refused, because the verdict was in accordance with the law and the evidence. Any other verdict would have been in violation of law and without any evidence in support of it. The several grounds upon which the new trial was asked are the same as are here assigned for error and have been considered.

As to the 14th and 15th grounds of error. They are not well taken. They beg the question.

The 16th assignment is like the 14th and 15th, *ante.*

As to the 17th ground, the rate of interest as regulated by the contract for 8 per cent., and by the provisions of the statute under which the bonds were issued, before cited, which is still in force, and is not affected by any repeal or amendment. But if such were not the case we contend that the preponderance of authority, so great as to justify the assertion that it is the settled rule of law, is, that contracts drawing a specified rate of interest before maturity draw the same rate of interest afterwards. Myer's Fed. Dec., Bonds, sec. 1470 ; 17 Cen. Law Journal, 124, *et seq.*

We insist that the issue of the bonds was in all respects regular, and the county of Jefferson is bound in law for their payment. But if there had been irregularities in the issue, as contended for by the counsel and the agent of the Board of Commissioners, such irregularities are waived by the acquiescence of the county in the issue, and are cured by the payment of interest on the bonds regularly for twenty-three years; and by the act of the Legislature, (chaps. 927, 3474) directly or by implication, declaring the bonds to be valid. Either of which is sufficient to make them binding. Myer's Fed. Dec., secs. 1023, 1193, 1215,

1667, 1683, 1686, 1227, 1660, 1661, 1673, 1679, 1681, 1698, 1671.

THE CHIEF-JUSTICE delivered the opinion of the court.

The *first* and *second* assignments of error relate to the overruling of the demurrer to the declaration. The declaration alleges that the county of Jefferson issued its bond, and then and there acknowledged itself indebted to bearer in a sum of money payable at a day certain with interest at eight *per cent.* per annum, and at the day payment was refused, plaintiffs being the bearer and entitled thereto. Copies of bonds are annexed to the declaration. On their face is written and printed: "Issued in pursuance of an order of the Board of County Commissioners on the —— day of ———, A. D. 1857." "Subscription to Pens. & Geo. R. R. Co. by a vote of county." "Convertible into stock of the company." They are signed, "Thos. J. Chase, Judge of Probate and *ex-officio* President of the Board of County Commissioners. Attest: Sam. Puleston, County Treasurer." Sealed with the seal of the Judge of Probate.

Defendant demurred on the grounds, (1) that it does not appear that defendant had any power or authority to make and execute the alleged bonds. (2.) That the county could not make such bonds unless under and by virtue of some legislative enactment, and plaintiff does not aver that the alleged bonds were so executed. The demurrer was overruled.

It is an admitted and undisputed doctrine that the power of public and municipal corporations to subscribe to the stock of railway companies and issue bonds therefor must be expressly conferred. And hence as a matter of pleading the authority or power to issue the bonds in suit ought to appear on the face of the declaration, or by some recital in the bonds made part thereof; that is, it should thus appear

that they were issued for some purpose authorized by statute. 1 Dillon's Mun. Corp., §509.

In Thayer vs. Montgomery Co., 3 Dillon, C. C., 389, which was a suit on county bonds, defendant demurred to the declaration on the ground that the authority or power of the county to issue the bonds is not averred and does not appear on the face of the bonds. Miller, J., says: "The third ground of demurrer presents to my mind a more serious question. It is, that an authorized lawful purpose for which the bonds were issued should be alleged in the declaration or be recited in the bonds which are made part thereof. This I think is a sound proposition."

In the same volume in Kennard vs. Cass Co., p. 149, Dillon and Krekel, J. J., it is said: "But where the maker is a county or other corporative body which has no inherent or general power to make such instruments, and can make them only by virtue of special authority, the principles of pleading require that such authority should appear by distinct averment of the special act conferring it, or by recital of the bond in that respect." And see Smith vs. Tallapoosa County, 2 Woods, 574.

In order to recover on the bonds of a county it should appear by special averment in the declaration (unless the same appears on the face of the annexed bond) that the authority for issuing is an act of the Legislature, citing the act, and that all the essential conditions had been complied with, the power depending upon such conditions, and where compliance with these conditions does not appear on the face of the bonds it must be otherwise proved.

The bonds in question are supposed to have been issued in pursuance of the provisions of the Internal Improvement Act of 1855. That act is not referred to in the declaration, nor is it averred that the Pens. & Geo. Railroad, referred to on the face of the bonds, is a road embraced in the pro-

visions of the act or that this railroad company had accepted the provisions of the act, nor that said railroad or its extensions were contemplated to pass through or to terminate in or near the county of Jefferson; nor that the county subscribed for the stock after consent thereto duly obtained by submitting the question " whether or not stock should be subscribed and taken " at an election duly held according to the provisions of the act, a majority of the legal voters having voted in favor thereof in pursuance whereof subscription to the stock of said company was made by the Board and the bonds in question duly issued and "disposed of for the payment of such subscription."

These conditions were essential to create a liability on the part of the county, according to the requirements of the act, and should be averred in appropriate form. Lincoln vs. Iron Works Co., 103 U. S., 412; Clay Co. vs. Society, &c., 104 U. S., 579, 586; Smith vs. Tallapoosa, 2 Woods, C. C., 574, referred to by respondent, do not conflict with but support this doctrine. In all these cases the declaration or the bonds recite the source of the power to issue the bonds.

The result is that the demurrer should have been sustained and the plaintiffs allowed to amend their declaration.

The case having been tried upon the issues presented by the pleadings, and various questions arising thereon having been fully discussed upon this appeal, we proceed to examine these questions, as the case may be again tried after amendment of the pleadings.

The *third* and *fourth* errors assigned are in effect that in deciding upon the motion to strike out the defendant's pleas on the ground that they were not properly verified, the court in ruling that the verification was not sufficient to require plaintiffs to prove the execution of the bonds sued on.

There can be no error in this ruling because it was not

pertinent to the decision of the motion, but was in the nature of an opinion of the court upon a question not yet reached in the cause, thrown out as a suggestion to the parties, and did not preclude the defendant from making any objection to evidence to be subsequently offered by the plaintiffs. The question did not arise upon the trial as there was evidence given by the plaintiffs at the trial showing the signing of the bonds by the persons whose names were appended thereto, and that they were the officers of the county as indicated upon the bonds.

The *fifth* and *sixth* grounds of error, are that the court upon the examination of the persons drawn as jurors, permitted the plaintiffs counsel to examine them " as to their ability to calculate interest, and to work interest in case of partial payments such as might arise upon the pleadings and proofs in this case."

The Statute of 1877, chapter 3010, section 7, provides that when the nature of any case requires that a knowledge of reading, writing or arithmetic is necessary to enable a juror to understand the evidence to be offered on the trial, it shall be a cause of challenge if he does not possess such qualification, to be determined by the judge. McC. Dig., 446, section 9.

Under this statute the qualifications of the juror in respect to the sufficiency of his knowledge and education, in other words, his practical education upon the questions likely to arise on the trial, are to be determined by the judge.

The object is to procure a jury sufficiently intelligent to understand the testimony and to render a proper verdict upon it. The ruling of the court here was within the scope of the statute and there is no error. It would be difficult to find error where the discretion of the judge is so broad in cases of this character.

The *seventh* and *eighth* grounds of error are in deciding that Finlayson and Bailey were competent jurors, they having each stated on their *voir dire* that they owned bonds of Jefferson county similar to those involved in this suit, and of the same issue, and Bailey's bonds were in litigation in another suit in the same court. On challenge by defendant for cause the court overruled the challenge and decided that they were competent jurors, whereupon defendant challenged them peremptorily, and this exhausted defendant's right of peremptory challenge before the jury was completed.

The statute law says the court shall examine on oath any person who is called as a juror, to know whether he is related to either party, or has any interest in the cause, or has expressed or formed any opinion, or is sensible of any bias or prejudice in a suit. Chapter 1628, sec. 24, Acts 1868 The court is to determine whether any of the grounds exist.

That the juror is interested in the pending or a similar suit, are grounds of challenge. Fleming vs. State, 11 Ind., 234; Davis vs. Allen, 11 Pick., 466; Profatt on Jury Trial, §168.

A principal challenge to the polls is founded on a *cause* of bias or partiality, which, if admitted or proved to the satisfaction of the court, will, as a matter of law, render the juror incompetent. Profatt, §167.

The fact that jurors are owners of similar bonds, that their validity is in question in this and in other suits pending, and that the decision or verdict in one is practically decisive of the other, is cause of bias and prejudice. The defendant's challenge of Finlayson and Bailey for cause should have been allowed.

The *ninth* assignment of error will be disposed of in subsequent portions of this opinion.

The *tenth* alleged error is in the exclusion of the returns of an election in Jefferson county, held in 1856, to show the number of voters in the county soon after the election held with reference to the issue of the bonds.

The number of votes cast on the subject of the issuing of bonds upon a subscription for railroad stock is not material to the validity of the bonds. It was only required by the Internal Improvement act, section 22, that a majority of the votes cast should be in favor of the measure. The returns of another election upon another question could not affect the validity of the election on the question of subcription for stock. The ruling was, therefore, correct.

On the motion for a new trial it was insisted the act of the Judge of Probate, as *ex-officio* President of the Board of Commissioners, was nugatory and in violation of the Constitution.

The following question is presented: Was it within the power of the Legislature in 1845, to impose upon the Judge of Probate the office and duties of President of the Board of County Commissioners?

The Constitution divided "the powers of government" into three departments, Legislative, Executive and Judicial, and declared that "no person, being of one of those departments, shall exercise any power properly belonging to either of the others, except in the instances expressly provided in this Constitution." Const. of 1839, Art. 2; Thomp. Dig., 25.

The judicial power of this State shall be vested in a Supreme Court, Courts of Chancery, Circuit Courts and Justices of the Peace. Art. 5, sec. 1; Thomp. Dig., 49.

The General Assembly shall provide by law for the appointment in each county of an officer to take probate of wills, to grant letters testamentary, of administration and guardianship, &c. Art. 5, sec. 9; Thomp. Dig., 44.

The General Assembly shall have power to establish in each county a Board of Commissioners, for the regulation of the county business. Art. 5, section 19; Thomp. Dig., 44.

By act of July 25, 1845, the General Assembly provided for the appointment of a Judge of Probate, and prescribed his duties. Thomp. Dig., 57. The Judge of Probate in each county shall be *ex-officio* a member and President of the Board of County Commissioners. Ibid, 58.

Under the foregoing provisions of the Constitution, in force from the organization of the State until long after the bonds in question were executed, the officer called a Judge of Probate, created by the Legislature, was not one of those in whom was vested " the judicial power of this State." The prohibition to exercise any duty not strictly pertaining to the judicial power, did not extend to the county officer thus created. The officer was called into existence and his duties prescribed, not only to take probate of wills, &c., but to record his proceedings, to have the custody of the records of the office, to certify copies thereof, to preside over the Board of County Commissioners, to keep the record of the proceedings of the board, &c.

These provisions of law were enforced and were assented to by all the departments of the government for more than twenty years, and the published proceedings of the county do not show that their validity has been ever before questioned. We, therefore, hold that the Legislature could and did rightfully confer upon the Judge of Probate the functions of a County Commissioner and the Presidency of the Board.

*As to the Issuing of the Bonds:*

The 22d section of the Internal Improvement Act of 1855 contains the law under which these bonds are supposed to have been issued, and provides that it shall be lawful for the

Board of County Commissioners of any county through or near which such railroads or their extensions may pass, and they are authorized to subscribe and hold stock in said company upon the same terms and conditions and subject to the same restrictions as other stockholders : *Provided*, It shall be first submitted to the vote of the legal voters of said county, to be taken at such times and places and in such manner as said authorities respectively may appoint, whether or not stock shall be subscribed and taken ; and if, when the vote be thus taken, it shall appear that a majority of the votes shall be in favor of such subscription it shall thereupon be lawful for the Board of County Commissioners, by agents by them appointed, to subscribe and take in such company such amount of stock as they may determine, the amount not to exceed fifty per cent. of the cost of construction through the county ; and to issue bonds of the county, payable with interest at such times and places as they may deem proper, and to dispose of the same for the payment of such subscription.

The plaintiff offered in evidence the record of the proceedings of the County Commissioners of Jefferson county at their meeting held June 5, 1856, page 130, as follows : " Be it known that *after public notice, duly given, the question was submitted* to a vote of the legal voters of Jefferson county on the 7th of May last, whether this county should subscribe for stock in the Pensacola and Georgia Railroad Company, and it was decided in favor of such subscription by a majority of 278 votes out of 297, being all the votes polled.

" Now, therefore, the Board of County Commissioners of Jefferson county, by virtue of the said vote and of the power and authority on them conferred by an act to provide for and encourage a liberal system of internal improvement, approved 6th January, 1855, have determined to subscribe for twelve hundred and fifty shares, of one hundred dollars

each, of the stock of said company, which sum, it is esti-mated, will not exceed one-half of the cost of construction of said railroad across Jefferson county.

" And further, the said County Commissioners do au-thorize and appoint Robert H. Gamble to be the agent to make the above subscription for and in behalf of Jefferson county."

And thereupon the plaintiffs further offered in evidence from the same book the proceedings of said Board at their meeting held March 31, 1856, as found on page 1147 of said book, and the proceedings of said Board at their meeting held January 10, 1857, as found on page 153 of said book.

The said proceedings were then read from said book as follows, from page 147 : " Whereas, the Board of Directors of the Pensacola and Georgia Railroad Company have called for an installment of ten per cent. on the subscription to the capital stock of said company; and whereas, this Board has subscribed to said railroad company for twelve hundred and fifty shares of said stock; it is, therefore, ordered, that Thomas J. Chase, Judge of Probate and *ex-officio* President of this Board, be and he is hereby required to issue bonds, with coupons of annual interest, of one hundred dollars each, drawing eight per cent. interest, payable annually from their date, pledging the faith and resources of this county for the payment of the same to the amount of twelve thou-sand five hundred dollars, being ten per cent. of said stock, said bonds to be attested by Samuel Puleston, Treasurer of this county; said bonds to be dated on the 10th day of April next, and made payable on the 10th day of April, 1861. And it is further ordered, that the President of this Board be and he is hereby required to pay said bonds over to the President of the Pensacola and Georgia Railroad Company, taking his receipts for the same; and that he, the President of this Board, be and he is hereby required

64

to keep a register of all such bonds issued by the order of this Board."

And from page 153 the said proceedings were further read as follows : "Whereas, the Board of Directors of the Pensacola and Georgia Railroad Company called an installment of ten per cent. on the capital stock of the company, payable on the first day of October, 1856, being the fourth installment called in, and another installment of twenty-five per cent., payable on the first day of December, 1856, being the fifth installment, amounting to thirty-five per cent. ; and whereas, this Board has subscribed to said railroad company for twelve hundred and fifty shares of said stock ; it is, therefore, ordered, that Thomas J. Chase, Judge of Probate and *ex-officio* President of this Board, be and he is hereby required to issue bonds and coupons amounting to forty-three thousand seven hundred dollars, said bonds to be attested by the Treasurer of the county, and made payable on the first day of January, 1877, drawing interest from the first day of January last at eight per centum per annum."

In Com'rs of Knox Co. vs. Aspinwall, 21 How., 155, 158, we find the following language :

" The ground upon which the want of authority to execute the bonds in question is placed is the alleged omission to comply with the requisition of the statute of 1849 in respect to the notices to be given of the election to be held on the first Monday of March, at which a vote was to be taken for or against a subscription of stock to the railroad company.

" It is insisted that an irregularity or omission in those notices had the effect to deprive the Board of this authority or rather furnish evidence that the power had never vested in it under the act; and, further, that the plaintiffs are chargeable with the knowledge of all substantial defects

or irregularities in these notices of the election, and not therefore entitled to the character of *bona fide* holders of the securities.

" The act in pursuance of which the bonds were issued is a public statute of a State, and it is undoubtedly true that any person dealing in them is chargeable with a knowledge of it; and as this Board was acting under delegated authority he must show that the authority has been properly conferred. The court must, therefore, look into the statute for the purpose of determining this question; and upon looking into it we see that full power is conferred upon the Board to subscribe for the stock and issue the bonds, when a majority of the voters of the county have determined in favor of the subscription, after due notice of the time and place of the election. The case assumes that the requisite notices were not given of the election, and hence that the vote has not been in conformity with the law.

"This view would seem to be decisive against the authority on the part of the Board to issue the bonds, were it not for a question that underlies it; and that is, who is to determine whether or not the election has been properly held, and a majority of the votes of the county cast in favor of the subscription? Is it to be determined by the court, in this collateral way, in every suit upon the bond, or coupon attached, or by the Board of Commissioners, as a duty imposed upon it before making the subscription?

" The court is of the opinion that the question belonged this Board. The act makes it the duty of the sheriff to give the notice of the election for the day mentioned, and then declares if a majority of the votes given shall be in favor of the subscription, the county board shall subscribe the stock. The right of the board to act in an execution of the authority is placed upon the fact that a majority of the votes had been cast in favor of the subscription;

and to have acted without first ascertaining it would have been a clear violation of duty ; and the ascertainment of the fact was necessarily left to the inquiry and judgment of the board itself, as no other tribunal was provided for the purpose. This board was one, from its organization and general duties, fit and competent to be the depository of the trust thus confided to it. The persons composing it were elected by the county, and it was already invested with the highest functions concerning its general police and fiscal interests.

" We do not say that the decision of the board would be conclusive in a direct proceeding to inquire into the facts previously to the execution of the power, and before the rights and interests of third parties had attached ; but, after the authority has been executed, the stock subscribed, and the bonds issued, and in the hands of innocent holders, it would be too late, even in a direct proceeding, to call it in question. Much less can it be called in question to the prejudice of a *bona fide* holder of the bonds in this collateral way."

"Another answer to this ground of defence is, that the purchaser of the bonds had a right to assume that the vote of the county, which was made a condition to the grant of the power, had been obtained, from the fact of the subscription, by the board, to the stock of the railroad company, and the issuing of the bonds."

Referring to the above case, the same court, in St. Joseph Township vs. Rogers, 16 Wall., 644, 665, says :

" Non-compliance with one of the conditions was clearly shown in that case, as the notices of the election as required by law had not been given in any form, but the decision was that the question as to the sufficiency of the notice and the ascertainment of the fact whether the majority of the votes had been cast in favor of the subscription was neces-

sarily left to the inquiry and judgment of the county board, as no other tribunal was provided for the purpose, and the court held that after the authority had been executed, the bonds issued, and they had passed into the hands of innocent holders, it was too late, even in a direct proceeding, to call the power in question, and that it was beyond all doubt too late to call the power in question to the prejudice of a *bona fide* holder of the bonds in a collateral way, which is attempted to be done in the case before the court." See also on this subject Lynde vs. The County, 16 Wall., 613, where the court says: " The County Judge is the officer designated by the statute to decide whether the voters have given the required sanction. He executed and issued the bonds, and the requisite popular sanction is set forth on their face. It is a settled rule of law that where a particular functionary is clothed with the duty of deciding such a question, his decision, in the absence of fraud or collusion, is final. It is not open for examination, and neither party can go behind it."

And in Supervisors vs. Schenck, 5 Wall., 772, 784, it is said : " When a corporation has power, under any circumstances, to issue negotiable securities, the decision of this court is that the *bona fide* holder has a right to presume they were issued under the circumstances which give the requisite authority, and they are no more liable to be impeached for any infirmity in the hands of such a holder than any other commercial paper." Similar language is used in Gelpcke vs. Dubuque, 1 Wall., 203 ; Town of Caloma vs. Eaves, 2 Otto, 484, 490.

The Board of County Commissioners was, by the 22d section of the Internal Improvement Act, before referred to, made the proper agent of the county to decide whether the necessary pre-requisites to the subscription for stock and the issue of the bonds had been complied with. Be-

yond the reasonable presumption that the officers of the law have discharged their duty, we have the official record that the contingency has happened, on the occurrence of which the authority to subscribe for stock and issue bonds was complete. They have certified in their records that " after public notice duly given the question was submitted to a vote of the legal voters of Jefferson county, * * * and it was decided in favor of such subscription by a majority of 278 votes out of 297, being all the votes polled."

It will be observed in the cases determined by the Supreme Court of the United States, the court especially entrusted under the Constitution with the function to determine questions as to the obligation of contracts, that recitals in municipal bonds are conclusive in favor of *bona fide* holders. With equal, if not with greater force, it may be said that innocent holders are protected where the municipal records themselves show that the preliminary conditions have happened, to wit : That the election was duly held, after public notice duly given and the question was submitted, and the result in favor of the action was decided, and so recorded, and in pursuance thereof the subscription was made and the bonds ordered to be issued. The board was the only tribunal appointed by law to determine the question, and upon the faith of their public record and action the bonds were issued and the board, representing the county, is now estopped to deny the truth of its own record as against *bona fide* holders of the bonds.

The defendant introduces certain papers on file in the clerk's office, showing that the name of the Judge of Probate was signed to the call for the election and the call does not say it is authorized by the Board. We see no objection to the election arising out of this fact. The Judge was the President of the Board, and the keeper of its records, its secretary also. Their record asserts that his action was au-

thorized, was " duly " taken and that is sufficient.    See Supervisors vs. Schenck, 5 Wall., 772.

*As to the question of interest:*

The board were authorized, by the law, in case bonds were issued, to contract to pay interest at a rate not exceeding ten per cent. per annum.    The bonds issued bore interest at eight per cent., and the principal became due in 1877. At the time they were issued the legal rate of interest for the loan of money was six per cent.    Defendant now claims that after the bonds ' became due, if they were properly issued, they should bear the rate fixed by the statute in force when the contract was made, the special contract to pay eight per cent. extending only to the time of maturity.

There is much conflict in the decisions of the courts on this question.    In many of the States it is held that the contract rate ceases at the time the principal is payable, the contract being, that interest at a certain rate is payable for the certain time only, after which the rate fixed by statute, in cases where no rate is specified in the contract, will be the rule.    In other States it is the rule that the contract rate will control until payment or judgment.    The preponderance of opinion is in favor of the doctrine that the 'stipulated rate attends the contract until it is satisfied or merged in judgment.    Cromwell vs. Co. of Sac, 96 U. S., 51, 61.

When a tenant agrees to pay a stipulated rent for one year and holds over, the law will imply that he is to pay at the same rate during the entire term of occupancy.    What is paid for the use of a house is called rent ; what is paid for the use of money is called interest..    I fail to see why the contract rate of interest should not control until the contract is extinguished ; or why a man ought to be excused from paying what in his judgment the use of money is worth, as evidenced by his contract, merely because he has failed to pay the money when it was due.    If that were the

rule he may find it to his advantage to violate his agreement to pay his debt when it becomes due. The better rule, most consonant with morality as well as law, is that the agreed rate of interest attends the contract until it is satisfied or extinguished.

*Seal.* Objection to the bonds was made upon the ground that they were sealed with the seal of the Judge of Probate. The county had no official seal. The Judge being the President of the Board, and being ordered to execute the bonds, it was not inappropriate that he used his official seal or any other device in the way of a seal that was most convenient.

We have considered, as we believe, questions which cover all the exceptions presented. As to the charge of the court and the instructions which were prayed it is unnecessary to consider them in detail. Our discussion of the several matters relating to the bonds and the evidence necessary to sustain them will indicate what instructions to the jury should be given.

As we have indicated, there are errors in the record for which we are obliged to reverse the judgment and remand the cause for further proceedings according to law.