## COUNTY OF CLAY *v.* SOCIETY FOR SAVINGS.

1. The legislation of the State of Illinois reviewed, whereunder the county of Clay issued two series of bonds, one dated Nov. 1, 1869, in payment of its subscription to the stock of the Illinois Southeastern Railway Company, and another dated Jan. 4, 1871, whereby its donation voted before the year 1870 to that company was paid.

2. The bonds are valid, as they were issued in strict conformity to the conditions and requirements prescribed by statute, and pursuant to a popular vote cast at an election lawfully held before the year 1870. The Constitution of Illinois, which took effect during that year, does not attempt to impair the obligation of any prior contract in regard to them, nor prohibit the issue of such as were necessary to give effect to a donation so voted.

3. Where a *bona fide* holder for value of a county bond sues thereon, its recitals, showing that it was issued in accordance with the statute, are conclusive and binding, and the fact that for many years its validity has been recognized by paying the interest thereon as it became due cures mere irregularities in issuing it. The county cannot, by setting them up, escape liability.

ERROR to the Circuit Court of the United States for the Southern District of Illinois.

On Nov. 6, 1849, the legislature of Illinois passed an "Act authorizing counties and cities in the State of Illinois to subscribe to the capital stock or make loans to railway companies," which contained the following provisions: —

"SECT. 1. Whenever the citizens of any city or county in this State are desirous that said city or county should subscribe for stock in any railroad company, already organized or incorporated, or hereafter to be organized or incorporated, under any law of this State, such city or county may, and are hereby authorized to, purchase or subscribe for shares of the capital stock in any such company, in any sum not exceeding $100,000, for each of such cities or counties, and the stock so subscribed for or purchased shall be

under the control of the county court of the county, or common council of the city, making such subscription or purchase, in all respects as stock owned by individuals.

"SECT. 2. For the payment of said stock the judges of the county court of the county, or the common council of the city, making such subscription or purchase, are hereby authorized to borrow money at a rate not exceeding ten per cent, per annum, and to pledge the faith of the county or city for the annual payment of the interest and the ultimate redemption of the principal, or, if the said judges or common council should deem it more advisable, they are hereby authorized to pay for such subscription or purchase in bonds of the city or county, making such subscription to be drawn for that purpose in sums not less than $50, bearing interest not exceeding ten per centum per annum : *Provided,* that no bond shall be paid out at a rate less than par value.

"SECT. 3. The railroad companies already organized or incorporated, or hereafter to be organized or incorporated, under the laws of this State, are hereby authorized to receive the bonds of any county or city becoming subscribers to the capital stock of such company at par and in lieu of cash.

"SECT. 4. No subscription shall be made, or purchase or bond issued, by any county or city, under the provisions of this act, whereby any debt shall be created by said judges of the county court of any county or by the common council of any city, to pay any such subscription, unless a majority of the qualified voters of such county or city (taking as a standard the number of votes thrown at the last general election previous to the vote had upon the question of subscription under this act) shall vote for the same ; and the judges of the county court of any county, or the common council of any city, desiring to take stock as aforesaid, shall give at least thirty days' notice, in the same manner as notices are given for election of State and county officers in said counties, requiring said electors of said counties or cities to vote upon the day named in such notices, at their usual place of voting, for or against the subscription for such capital stock which they may propose to make," &c. See Gross's Statutes of Illinois (3d ed.), pages 552, 553.

Afterwards, on Feb. 26, 1867, the legislature passed an act to incorporate the Illinois Southeastern Railway Company, the seventh section of which was as follows : —

"The county court, or board of supervisors (where such county has adopted township organization), of any county into or through

which this road or its branches may pass, is hereby authorized and fully empowered to donate to said company, as a bonus or inducement towards the building of said railroad or its branches, any sum not exceeding one hundred thousand dollars, and may order the clerk of the county court or board of supervisors of such county to issue bonds of the county to the amount donated; and such clerk of the county court or board of supervisors, as the case may be, of such county, shall countersign and deliver such bonds so issued to the president or directors of said company; which said bonds may bear any rate of interest not to exceed ten per cent. per annum, payable at the maturity of the bonds, as hereinafter expressed, and yearly thereafter: *Provided*, that no donation by the county court or board of supervisors of any such county shall be of a greater sum than fifty thousand dollars, until the question of such larger donation shall have been submitted to the legal voters of such county, at an election to be called, conducted, returns made, canvassed, and published, in the usual manner of calling, conducting, making returns, canvassing, and publishing special county elections," &c.

On Feb. 24, 1869, an act was passed to amend the act to incorporate the Illinois Southeastern Railway Company, sect. 10 of which provided: —

"That any village, city, county, or township organized under the township organization law, or any other law of this State, along or near the route of said railway or its branches, or that are in anywise interested therein, may, in their corporate capacity, subscribe to the stock of said company, or make donations to said company, to aid in constructing and equipping said railway: *Provided*, that no such subscriptions or donations shall be made until the same shall be voted for, as hereinafter provided."

The section then proceeded to declare that upon the application of twenty legal voters of any such city, village, county, or township, the clerk thereof should call an election to be held by the legal voters, to determine "whether such village, city, county, or township shall subscribe to the capital stock of said company, or make a donation thereto to aid in building or equipping said railway, and whether to be subscribed or donated, and the rate of interest and the time of payment of the bonds to be issued in payment thereof. Section 12 of the act declared as follows: —

" That when payment of subscription to the capital stock of said company or payments for donations to said company have been or shall be made by villages, cities, counties, or townships, in bonds of such villages, cities, counties, or townships, under any act authorizing such subscription or donation to be made, all such bonds issued or negotiated by the proper authorities of such villages, cities, counties, or townships, and appearing regular on the face thereof, shall, in the hands of said company or any other *bona fide* holder thereof, be deemed and taken in all courts and elsewhere, as *prima fucie* evidence of the regularity of everything required by the several acts in relation to the issuing of said bonds or by any other act to be done preliminary to the issuing and negotiation of said bonds."

On April 16, 1869, the legislature passed an act for the registration of municipal bonds in the office of the auditor of state, sect. 7 of which required that, before any county bond could be registered, the presiding judge of the county court should certify under oath to the auditor that all the preliminary conditions to their issue required by law had been complied with.    See Underwood's Statutes of Illinois, p. 994.

The Constitution of Illinois, which went into effect Aug. 8, 1870, declares (second additional section) : —.

" No county, city, town, township, or other municipality shall ever become subscriber to the capital stock of any railroad or private corporation, or make donation to, or loan its credit in aid of, such corporation : *Provided, however,* that the adoption of this article shall not be construed as affecting the right of any such municipality to make such subscriptions when the same have been authorized under existing laws by a vote of the people of such municipalities prior to such adoption."

This suit was brought by The Society for Savings against the County of Clay upon certain bonds dated Nov. 1, 1869, with the coupons attached, of a series issued by it to pay for stock in the Illinois Southeastern Railway Company, subscribed by the county board of supervisors, and upon certain bonds dated Jan. 4, 1871, with coupons attached, of another series issued by it to pay for a donation made to the company by that board, both series being issued, as was claimed, by authority of the foregoing legislation.

Although the instruments sued on are under seal, the suit is called in the record an action of assumpsit, and the defendant pleaded non-assumpsit.

Upon the trial, a jury being waived, the court made an elaborate and comprehensive finding of the facts, in which is set out in full a copy of one of the bonds belonging to each class sued on, and of one of the coupons attached to each respectively.

The subscription bonds, as appears by the finding of the court, contain this recital : —

"This bond being issued under and pursuant to orders of the board of supervisors of Clay County, Illinois, for subscription to the capital stock of the Illinois Southeastern Railway Company, as authorized by virtue of the laws of the State of Illinois. And the faith of the county of Clay is hereby irrevocably pledged for the payment of said principal and interest as aforesaid."

The donation series of bonds the court found to contain the following recital : —

" This bond is one of a series of bonds issued by Clay County to aid in the construction of the Illinois Southeastern Railway Company, in pursuance of the authority conferred by an act of the General Assembly of the State of Illinois, entitled ' An Act to incorporate the Illinois Southeastern Railway Company,' approved February 25, 1867, and an act amendatory thereof approved February 24, 1869, and of an election of the legal voters of Clay County, Illinois, held on April 22, 1868, under the provisions of said act."

" This bond is not to become a binding obligation of the said county of Clay until the following conditions shall have been complied with, to wit : this bond to become due and payable on the express conditions that said company shall have completed the whole length of its line from Shawneetown, on the Ohio River, to the Chicago Branch of the Illinois Central Railroad, and shall have the cars running thereon."

Upon the back of each one of the donation series of bonds was printed the following certificate : —

" STATE OF ILLINOIS, CLAY COUNTY, *ss :*

" I, Jno. L. Moore, clerk of the County Court of Clay County, in the State of Illinois, do hereby certify that the county court of said county have entered an order on the records of said county

court, directing me to indorse upon this bond the following words, to wit: All the conditions upon which this bond was to become a binding obligation of the county of Clay have been complied with.

"In testimony whereof, I hereto affix my hand and the seal of said court, at Louisville, this fourth day of January, A. D. 1871.

[SEAL.]                              "JNO. L. MOORE, *Clerk.*"

Upon all the bonds of both series was printed the certificate of the auditor of public accounts, as follows : —

"STATE OF ILLINOIS, AUDITOR'S OFFICE,
"Jan. 9, 1871, Springfield.

"I, Charles E. Lippincott, auditor of public accounts of the State of Illinois, do hereby certify that the within bond has been registered in this office this day, pursuant to the provisions of an act entitled 'An Act to amend an act entitled "An Act to incorporate the Illinois Southeastern Railway Company,"' approved February 24, 1869, as well as the provisions of an act entitled 'An Act to fund and provide for paying the railroad debts of counties, townships, cities, and towns,' in force April 16, 1869.

"In testimony whereof, I have hereunto subscribed my name and affixed the seal of my office the day and year aforesaid.

[SEAL.]                        "C. E. LIPPINCOTT, *Auditor P. A.*"

The court further found that on March 2, 1868, the board of supervisors made an order calling an election to be held by the qualified voters of the county upon two propositions : *First,* that the county should subscribe $100,000 to the capital stock of the Illinois Southeastern Railway Company, and issue in payment thereof bonds for an equal amount; and, *second,* that the county should donate $50,000 to the railway company, and issue bonds of the county to pay said donation; that the election was held in accordance with the order of the board of supervisors, and resulted in a majority of votes being cast in the county in favor of both of the propositions; that at a special meeting of the board of supervisors, held on the first Monday of November, 1868, the president of the board was instructed, by resolutions duly passed by the board, to make such donation, and to subscribe said amount upon the books of said railway company, the subscription and donation to be made strictly and only in accordance with the terms of the

proposition aforesaid, submitted and voted upon on April 22, 1865.

The court also found that the company had located its road and graded, bridged, and tied ten miles thereof before the first day of November, 1869, and that on that day the president of the board of supervisors made the subscription upon the books of the railway company, under and in pursuance of the submission, vote, and resolution aforesaid, the subscription being made upon the terms and conditions aforesaid.

The court further found that the $100,000 of bonds so voted as subscription as aforesaid were delivered to the company on Nov. 1, 1869, and subsequently thereto, the company having fully complied with the terms and conditions of the vote before receiving the bonds.

The court further found that, on Jan. 1, 1871, "the fifty thousand dollars so donated as aforesaid, under and in pursuance of the vote aforesaid, in the bonds of said county, were delivered and donated to said railway company, said railway company having complied with the conditions of said vote," &c.

The court also found that both series of bonds had been registered in the office of the auditor of public accounts, and that taxes had been certified by him, and the interest paid on the bonds up to the commencement of this suit.

The findings of the court further state that the plaintiff purchased all the bonds sued on for full value before maturity, and was an innocent holder thereof without notice of any irregularity in the issue, except such constructive notice as the law charges it with.

The court found the issue for the plaintiff and rendered judgment. The county sued out this writ.

*Mr. W. J. Henry* for the plaintiff in error.

*Mr. David T. Littler* for the defendant in error.

MR. JUSTICE WOODS. after stating the facts, delivered the opinion of the court.

Two classes of bonds are sued on, namely, the subscription bonds and the donation bonds. The defences set up against each class will be separately considered.

The findings of the court and the sections of the act of 1849,

recited in the preceding statement of facts, furnish ample ground for the judgment in favor of the defendant in error upon the subscription bonds held by it.

The plaintiff in error, however, insists that there is no evidence or finding that the thirty days' notice of the election required by the statute had been given, or that a majority of the legal voters, taking as a standard the number of votes thrown at the last general election for county officers, voted in favor of the proposition to subscribe stock and issue the bonds of the county to pay for it.

There are three conclusive answers to this contention.

First, the bonds recite that they were issued under and pursuant to the orders of the board of supervisors of Clay County, as authorized by virtue of the laws of the State of Illinois. The act of Nov. 6, 1849, authorized the judges of the county court to issue the bonds only in case a majority of the voters of the county, taking as a standard the number of votes thrown at the next preceding general election, should vote in favor of the proposition to subscribe to the stock of some designated railroad company, and pay for it by the issue of county bonds. The ultimate decision of the question whether such a vote had been cast was, therefore, left with the judges of the county court. The recital of the bonds, that they were issued pursuant to the orders of the board, the successor of the county court, as authorized by virtue of the laws of the State of Illinois, is equivalent to a declaration by the board, upon the face of the bond, that the election had been held and had resulted so as to authorize the lawful issuing of the bonds. When the bonds are in the hands of a *bona fide* holder this recital is conclusive and binding upon the municipality. *Town of Coloma* v. *Eaves*, 92 U. S. 484; *Marcy* v. *Township of Oswego*, id. 637.

The second answer is, that if the county had, under the law, authority to issue bonds, and did issue them, and they went into circulation and came to the hands of a *bona fide* holder, he was not, in a suit upon them, required to aver or prove the performance of any of the requisites necessary to give them validity. The want of such performance is a matter of defence, and the burden of proof is upon the county to establish it. *Lincoln* v. *Iron Company*, 103 U. S. 412. In this case the

county offered no evidence in any degree tending to show that the conditions precedent upon the performance of which the issue was authorized had not been complied with. It cannot, therefore, assume that the conditions were not performed, and insist on non-performance as a defence.

The third answer is, that sect. 12 of the act of Feb. 24, 1869, amendatory of the act to incorporate the Illinois Southeastern Railway Company, which was indorsed on the bonds, expressly provided that when payment to the capital stock of the company should be made in the bonds of counties or townships, under any act authorizing such subscription, all such bonds issued by the proper authorities and appearing regular on their face should, in the hands of a *bona fide* holder, be deemed and taken in all courts, and elsewhere, as *prima facie* evidence of the regularity of everything required by the several acts in relation to the issuing of said bonds, or by any other act to be done preliminary to their issue and negotiation.

As no proof has been submitted of any irregularity in the issuing of the bonds, this section of the law is conclusive against the existence of any.

It is next insisted by plaintiff in error that the general statute of Nov. 6, 1849, so far as it concerned the Illinois Southeastern Railway Company, was repealed by sect. 7 of the act to incorporate that company. That section authorized the county court of any county, or the board of supervisors (when the county had adopted township organization), to donate to said company, as a bonus or inducement towards the building of said railroad or its branches, any sum not exceeding $100,000, and to issue to the company its bonds in satisfaction of said donation ; provided, that no donation of a greater sum than $50,000 should be made until the question of such larger donation should have been submitted to the vote of the legal voters of the county, and a majority thereof should have voted in favor of such donation. The contention is that it was not the purpose of the legislature in these enactments to permit a county to purchase or subscribe to the capital stock of a railroad company and also make a donation to the same company.

There is not a word in the charter of the Illinois Southeastern Railway Company which expressly excludes it from

the benefits of the general railroad subscription law of Nov. 6, 1849. Nor is there the slightest repugnancy between the provisions of the two acts. The latter, being a general law, authorized any city or county in the State to purchase or subscribe to the capital stock of any railroad company anywhere in the State; the former, being an act to incorporate a private corporation, authorized any county through which the railroad of the company or any of its branches might pass, to make a donation to the company as a bonus or inducement towards the building of the railroad or its branches. There is no ground whatever for the contention that the general law was repealed or modified, in any respect, by the act incorporating the Illinois Southeastern Railway Company. There is no repugnancy or inconsistency between them. A statute can be repealed only by an express provision of a subsequent law or by necessary implication. To repeal a statute by implication, there must be such a positive repugnancy between the provisions of the new law and the old that they cannot stand together or be consistently reconciled. *McCool* v. *Smith*, 1 Black, 459; *Wood* v. *United States*, 16 Pet. 342.

We are of opinion, therefore, that the act incorporating the Illinois Southeastern Railway Company does not repeal or modify the general law of Nov. 6, 1849.

The plaintiff in error further insists that sect. 10 of an act approved Feb. 24, 1869, amendatory of the charter of the Illinois Southeastern Railway Company, had the effect to repeal, not only sect. 7 of the charter of the company, but also the general law of Nov. 6, 1849, so far as it concerned the company.

This section provides "that any village, city, county, or township along or near the route of said railway or its branches, or that are in anywise interested therein, may, in their corporate capacity, subscribe to the stock of said company, or make donations to said company to aid in constructing and equipping said railway," provided the same shall be voted for at an election called by the clerk of the village, city, county, or township, upon the written request of twenty legal voters thereof, and upon thirty days' notice.

Conceding that this section is a substitute for sect. 7 of the original charter, it cannot be held to repeal the general law,

for the reasons already stated in reference to sect. 7 of the original charter; namely, that there is no direct appeal, and there is no repugnancy between the two acts which would make a repeal by implication.

The subscription bonds sued on were, according to the findings of the court, issued in substantial conformity, not only with the general act of Nov. 6, 1849, but also with the amendatory act of 1869, so that, conceding that the latter act is applicable to the issuing of the bonds in question, they are valid in the hands of a *bona fide* holder. When these bonds were issued there was ample authority for their issue under the laws of the State of Illinois. The recital that they were issued in conformity with the laws of the State, as already shown, is binding on the county, when the suit is brought on the bonds by a *bona fide* holder, and concludes the county from setting up any irregularities in their issue, if any existed. We are of opinion, therefore, that the suit upon the subscription bonds was well maintained.

The objections to the bonds known and designated as donation bonds have nothing substantial in them. The bonds refer on their face to the laws which authorized their issue, and recite that they were issued in pursuance of authority granted thereby. They carry an indorsement made by the clerk of the county court, by its order and under its seal, that all the conditions upon which they were to become a binding obligation of the county have been complied with, and printed on every one of them is a copy of sect. 12 of the act of Feb. 24, 1869, amendatory of the charter of the company, which makes the fact of the negotiation of them in payment of a donation to it *prima facie* evidence of the regularity of their issue when in the hands of a *bona fide* holder. There is no proof or offer of proof that they were not issued in conformity with the requirements of law.

The plaintiff in error argues, however, as conclusive against their validity, that they were not issued until after Aug. 8, 1870, the date upon which the present Constitution of Illinois went into effect, which by the second additional section declared that no municipal corporation should ever make donation to any railroad or private corporation.

The findings of the court show that the people of Clay County, on April 22, 1868, voted in favor of a proposition to donate $50,000 to the Illinois Southeastern Railway Company, provided the railroad of said company should be located on a certain line specifically described, and provided the bonds issued in payment of such donation should not be payable until the railway had been completed the whole length of the line, from Shawneetown, on the Ohio River, to the Chicago Branch of the Illinois Central Railroad, and the cars running thereon; that on the first Monday of November, 1868, the board of supervisors of the county, by resolution duly passed, directed its president to make the donation aforesaid upon the books of the railway company, in accordance with the condition of said vote, and that before the first day of November, 1869, the railway company had located its line of road, as required by the conditions upon which the donation was to be made, and had "graded, bridged, and tied ten miles thereof."

We think it may be fairly deduced from the findings of the court below that, on Nov. 1, 1869, the president of the board of supervisors subscribed upon the books of the railway company as directed by the board of supervisors the donation of $50,000, which the county had voted, and the brief of counsel for plaintiff in error distinctly admits that such is the proper construction of the findings.

These transactions made a contract between the county and the railway company to the effect that in consideration that the railway company should construct its road upon the line designated, and complete it and have the cars running thereon between the points mentioned, the county would deliver its bonds to the railway company in satisfaction of its donation. This contract had been partly performed by the railway company before the Constitution of 1870 went into effect. The adoption of the Constitution could not annul or impair it. The county was bound notwithstanding the provision of the Constitution of 1870. *Town of Concord* v. *Savings Bank*, 92 U. S. 625.

And when, as appears by the findings of the court, the railway company had, on Jan. 1, 1871, fully completed its road according to the terms upon which the donation was to be

made, it was entitled in law under its contract to the bonds of the county in satisfaction of the donation.

There was, therefore, authority to issue these bonds upon the conditions prescribed. The court found that the defendant in error was a *bona fide* holder, and that the railroad company had complied with all the conditions upon which the bonds were to be issued to it. Upon this state of facts the attempt of the plaintiff in error to avoid its liability upon these bonds seems a hopeless undertaking.

Other defences are set up against a recovery in this case. Plaintiff in error alleges that the authority to donate $50,000 to the railway company was expressly conferred upon the board of supervisors without any vote or precedent condition whatever, and the authority being conferred upon the board could not be by it " delegated to the people to be voted upon at a popular election." It further alleges that the bonds are not negotiable, and it insists that the authority of the board of supervisors, under the original charter of the railway company, to make the donation, was repealed by the amendatory act of Feb. 24, 1869.

These defences do not in our judgment merit reply.

The plaintiff in error has received in consideration for the issue of each series of bonds everything for which it bargained. They were regularly issued, and have been registered under the Statute of Illinois with the auditor of public accounts, upon the strength of a certificate under oath made by a supervisor of the county pursuant to law, to the effect that all the preliminary conditions to the issue of the bonds required by law had been complied with. The record shows that taxes had been levied to pay interest, and that interest had been paid on the subscription bonds for eleven years, and on the donation bonds for nine years. This fact would of itself cure mere irregularities in the issuing of the bonds when they were sued on by a *bona fide* holder for value. *Supervisors* v. *Schenck*, 5 Wall. 772. Under these circumstances, when a suit is brought on them by such a holder, as found to be the case here, some substantial defence must be set up by the county before it can escape its liability. Such defences as are relied on in this case will not avail.

*Judgment affirmed.*