[Carpenter v. Greene County.]

# Carpenter v. Greene County.

*Action against County upon Interest Coupons on Bonds.*

1. *Bonds issued by county; validity of subscription for stock in railroad company not affected by unlawful promise.*—Where bonds are issued by a county in payment of a subscription for railroad stock made by said county under a general law, the fact that the officers of said railroad company, for the purpose of inducing the citizens of the county to vote for the subscriptions to stock in said company, made promises to said citizens that the railroad would run through said county, and such promises were unfulfilled, does not affect the validity of the bonds issued under the subscription actually made, nor does such fact affect the right of innocent purchasers of the bonds for value to recover thereon.

2. *Same; right of a collector to maintain action on said bond.* Where bonds, with the interest coupons attached issued by a county in payment of its subscription to stock in a railroad company, are made payable to the payee or bearer, and one of said bonds and the interest coupons are transferred by the owner without endorsement to another person, with instructions for the latter to collect the interest coupons in such manner as he pleases, and he is given the right to sue thereon in his own name or to settle by compromise, or to do with the bonds and coupons as he wished, with the exception that after deducting the expense of collection and the commissions to the collectors, the balance was to be paid to the owner, such collector can maintain a suit against the county on the said bond or the interest coupons attached thereon.

3. *Same; validity of subscription to stock of railroad company.* The general statute of the Legislature, approved December 31, 1868, authorized the several counties throughout the State to subscribe to the capital stock of such railroads as they deem most conducive to their respective interests; such subscription to be paid in bonds, provided a majority of the qualified electors voting at an election to be held for that purpose, voted in favor of such subscription (Acts of 1868-69, pp. 514-20). On the same day there was a special act passed by the General Assembly, amending the charter of a railroad company, and this special act provided that counties

[Carpenter v. Greene County.]

through which said railroad passed might subscribe for stock of said company and issue bonds in payment thereof, if two-thirds of the qualified electors of the county, at an election held for that purpose voted in favor of such action. (Acts of 1868, p. 566). Said railroad company made a proposition to the court of county commissioners of a county through which said railroad did not pass, to subscribe to its capital stock in accordance with the general statute above mentioned. There was an election held in said county for determining whether the subscriptions should be made to the stock of said railroad company. At this election a majority, but less than two-thirds, of the electors voting at said election, voted for the subscription, and thereupon the county accepted the proposition, made the subscription, and issued bonds in payment thereof. *Held*: There was no absolute repugnance between the general and the special acts, that the general act was not repealed, and that, therefore, the county subscription and bond issue were binding upon said county.

4. *Same; same; effect of statute ratifying and confirming acts of county.*—Where a county, under the general statute providing therefor, holds an election to aetermine whether or not the county shall subscribe to the stock of a railroad company, which was to be paid for by the issuance of bonds, any irregularity in the conduct of such election or the issuance of bonds is cured by a subsequent act legalizing and confirming the acts and things theretofore done and performed under the statute, in substantial compliance with the provisions of the general act under which the election was held and the bonds issued.

APPEAL from the Circuit Court of Greene.

Tried before the Hon. S. H. SPROTT.

This was a suit brought by S. J. Carpenter on the 30th day of June, 1897, in the circuit court of Greene county, against Greene County, to recover upon three interest coupons, attached to three certain bonds of said county, issued for stock in the Selma, Marion & Memphis Railroad Company. The case was tried upon the defendant's sworn plea, denying the plaintiff's ownership of the legal title to the coupons sued on at the institution of the suit, and upon the agreement of plaintiff's counsel that defendant might plead the general issue, with leave to give in evidence any facts that will constitute a defense to the action, as if specially

pleaded, with leave to the plaintiff to give in evidence any facts that would constitute a good replication, as if specially pleaded.

The complaint contained three counts, each seeking a recovery of twenty dollars, with interest due as shown by a coupon executed by the defendant and attached to a certain bond of Greene county. The three coupons were identical, except that each contained the number of the bond from which it was taken, the numbers being forty-eight, forty-nine, and fifty, respectively. The plaintiff produced in court and introduced in evidence the three coupons, as also the three bonds from which they were taken. The coupons were payable to the holder at the office of the Selma, Marion & Memphis Railroad company, in the city of Memphis, Tenn., or their agency in the city of New York, in the State of New York. Each bond is signed by A. R. Davis, the then judge of probate of Greene county.

It was admitted by counsel for the defendant county that Judge A. R. Davis executed said bonds and coupons, although counsel stated that the county denied his legal authority to do so. The plaintiff introduced in evidence the record of the court of county commissioners of Greene county, which showed that the Selma, Marion & Memphis Railroad Company, in pursuance of the provisions of an act of the Legislature of the State of Alabama, entitled "An act to authorize the several counties and towns and cities of the State of Alabama to subscribe to the capital stock of such railroads throughout the State, as they may deem most conducive to their respective interests," approved December 31, 1868, proposed to the county of Greene to subscribe for and take eighty thousand dollars of the capital stock of said railroad company at $50 per share, to be paid in the bonds of said company, payable to the said railroad company, or bearer, twenty years after date till paid, with interest coupons attached; that thereupon the commissioners court of said county, on the 9th day of August, 1869, made an order by which said proposition was submitted to the qualified electors of said county, at an election to be held at the several precincts of said county, on the 14th of September, 1869, after giving thirty days'

notice thereof as required by law; that such election was held on the 14th day of September, 1869, in pursuance of said order, at which election, according to the returns thereof, the result was in favor of the proposition and subscription, the vote for subscription being 1011 and the vote against subscription being 550, and that thereupon said court ordered that the proposition and returns of election be recorded; that the proposition be accepted, "and that the said court of county commissioners are hereby authorized and do make, in the name and for the said county of Greene, the said subscription of eighty thousand dollars to the capital stock of said company." It was further ordered that the bonds of said county of Greene in the sums of $500 each, with interest coupons attached, payable to said company or bearer at the office of said company, or at their office or agency in the city of New York, be issued and delivered to said company, signed by the probate judge of said county; and that the coupons thereto attached, of twenty dollars each, shall be signed by said judge, payable in like manner on the first days of January and July of each year.

The plaintiff also introduced in evidence from the volume of Acts of 1869-70, p. 236, an act to legalize, ratify and confirm all acts and things of every kind heretofore done and performed in this State in substantial compliance with an act of the General Assembly of Alabama, entitled "An act to authorize the several counties and towns and cities of the State of Alabama to subscribe to the capital stock of such railroads throughout the State as they may consider most conducive to their respective interests, approved December 31, 1868," which act of ratification was approved March 1st, 1870.

The plaintiff also introduced in evidence another act of the Legislature of Alabama (Acts of 1869-70, p. 305), entitled "An act to ratify the elections held in the towns of Greensboro and Eutaw, and in the counties of Hale, Greene, and Pickens, to subscribe stock to the Selma, Marion & Memphis Railroad Company," which act of ratification was approved March 3d, 1870. It re-

[Carpenter v. Greene County.]

cites the said election and the number of votes that were cast, and affirms that a majority of the votes cast at each of said elections were held and provided that said elections are and each of them is hereby ratified and made valid in all respects and particulars.

The plaintiff, S. J. Carpenter, testified as follows: "At the time this suit was brought the bonds and coupons introduced in evidence were in the hands of my attorneys. Shortly before this suit was brought I turned them over to said attorneys to bring this suit. At the time I turned them over to my said attorneys I was in possession of said bonds and coupons, claiming to own them. I was the holder and bearer thereof." Upon cross-examination he testified as follows: "The bonds and coupons were delivered to me by Mr. Judah Moses, of Montgomery, Alabama, shortly after the case of *Kortrecht v. Greene County* was tried in the United States court at Birmingham; said suit having been brought on two of the same issue of bonds, and having been tried in December, 1896. I was residing in Montgomery at the time the suit of Kortrecht was tried, but had resided there only a short time. I was, for a long time before I moved to Montgomery, a resident of Greene county, and knew that Greene county had denied that it was liable to pay the bonds and coupons introduced in evidence in this case, before I became possessed of them. I did not pay said Moses anything for said bonds and coupons. Mr. Moses delivered the said bonds and coupons to me, with authority to collect them, telling me that he wuold give me ten per cent. of the amount that I collected on the same for my trouble and also expenses. It was in this way that I became possessed of the bonds, and this is the only interest that I have in them. I did tell Judge Smith of Greene county that I had these bonds from a party in Montgomery for collection, and that I would get a good commission for collecting them. This conversation occurred in Eutaw before this suit was brought. Judge Smith told me in that conversation that Greene county would not pay the said bonds and coupons, because the county denied its liability on the bonds, and did not regard the present holders of the bonds as innocent holders of them."

Upon further examination in rebuttal, he further testified as follows: "When Mr. Moses delivered the bonds to me he was in possession of them, claiming to own them. He authorized me to collect them, sue upon them in my own name if I saw proper, or to compromise with the county, as I deemed best. He said to me: 'They are your bonds; collect, compromise or sue for them in your own name as you deem best.' It was agreed between us at the time that I was to retain out of my collections made on said bonds and coupons the cost of collection, including any attorney's fees I might incur, and my commissions of ten per cent., and the balance was to be paid by me to said Moses. It is by virtue of that contract that I have brought this suit and am now possessed of said bonds."

The only other evidence bearing on the question of ownership of the legal title was that of the witness, A. P. Smith, who testified for the defendant, and whose evidence related to a conversation had with the plaintiff before the institution of this suit.

The defendant read in evidence an agreement of counsel which sets forth in substance the following: That only one election on subscription to railroad stock was held in Greene county, and no other issue of bonds was ever made by said county than the series of which these form a part, from which the coupons sued on are taken. That certain witnesses, if present, would testify in substance that General Forrest, President of said railroad company, represented to the people of Greene county, previous to the election and in several speeches he made to them pending the election, that if they would vote for the subscription the said railroad company would use the money arising from the sale of the bonds in Greene county in constructing the railroad through that county, and if they voted for the subscription said company would construct and operate a railroad through Greene county, which would run from Memphis, Tennessee, to Selma, Alabama; that said company never built any railroad in Greene county, and that the money arising from the sale of the bonds voted at said election was not used to build any rail-

road in Greene county, Alabama. That certain witnesses, Smith, Roberts, and Barnes, officers of Greene county, did not have in their possession any certificates of the capital stock of said railroad company and had never seen any such certificates among the papers and effects of the county, and that as far as they knew Greene county never received from said company any certificate for any share of stock.

It was further agreed that the Selma, Marion & Memphis Railroad Company was at the time of the trial, and had been for the twenty-seven years last prior thereto, insolvent and wholly out of business. The trial occurring on March 30th, 1898. The defendant also introduced in evidence an act of the General Assembly of Alabama, approved December 31, 1868, to be found in the Acts of 1868, p. 566, entitled "An act to amend and revise the general acts incorporating Cahaba, Marion & Greensboro Railroad Company, and to change the name and style of said company." The bill of exceptions sets forth the sections from said act claimed by defendant to bear upon this case. The sections set out are numbered 1, 2, 4 and 5. The contention of the defendant is that under and by virtue of this act Greene county could issue no bonds in aid of said railroad company, except after a two-thirds vote of the people. At the election there was a majority in favor of subscription, but not a two-thirds majority. The bill of exceptions recites that it contains all the evidence.

Upon the introduction of all the evidence, the court at the request of the defendant gave the general affirmative charge in its behalf, and refused to give the general affirmative charge requested by the plaintiff. To each of these rulings the plaintiffs separately excepted.

There were verdict and judgment in favor of the defendant. The plaintiff appeals, and assigns as error the refusal of the court to give the general affirmative charge requested by him, and the giving of the general affirmative charge requested by the defendant.

[Carpenter v. Greene County.]

CABANISS & WEAKLEY, for appellant.—1. Carpenter had the right to sue. Being in possession, with authority to collect, he could give a good acquittance, and the fact that Moses had a beneficial interest in the proceeds would not defeat Carpenter's right to sue.—*Berney v. Steiner Bros.*, 108 Ala. 111; *Bancroft v. Payne*, 15 Ala. 834; *Goodman v. Walker*, 30 Ala. 482; *Hanna v. Ingram*, 93 Ala. 483; 2 Pearsons Notes and Bills, 436; *Mumford v. Weaver*, (R. I.), 31 Atl. Rep. 1; *Bank v. Sevier*, 11 R. I. 376; *Henderson v. Davidson*, 157 Ill. 379; 41 N. E. 560; *Moore v. Hall*, 48 Mich. 143; 11 N. W. 844; *Wintermute v. Torrent*, 83 Mich. 555; 47 N. W. 358; *Branch v. Bank*, 70 N. W. 34; *Saulsbury v. Corwin*, 40 Mo. App. 373; 4 Am. & Eng. Ency. Law, (2d ed.), 342; 3 Randolph Com. Paper, § 1658; 1 Daniel Neg. Inst. (4th ed.), § 831; 2 Daniel Neg. Int. (4th ed.), §§ 1181a, 1191 and 1192; *Way v. Richardson*, 3 Gray, 412.

It has been held in Alabama that a suit by the holder of the legal title,—the one who may receive the money and discharge the debtor,—will not defeat, although he may hold the money, when collected, for the use of another, to whom he is bound to pay it.—*Rice v. Rice*, 106 Ala. 636; *Bibb v. Hall*, 101 Ala. 79; *Yerby v. Sexton*, 48 Ala. 311, 325; *Herschfelder v. Mitchell*, 54 Ala. 419; *Moore v. Penn*, 5 Ala. 135. But Carpenter's was more than a mere agent for collecting. Moses used language equivalent to words of transfer, and as Carpenter was to receive expenses he had a beneficial interest, as well as the legal title.—*French v. Jarvis*, 29 Conn. 348; *Eaton v. Alger*, 47 N. Y. 345, approved in 108 Ala. 111, 117.

2. The coupons sued on being payable to the "holder" and the bonds being payable to the railroad company, or bearer, at their office or agency in New York city, they passed by delivery merely and required no indorsement or other writing, either to pass the title or to authorize a suit thereon by the plaintiff.—*Town of Brewton v. Glass*, 116 Ala. 629; *K. C., M. & B. R. R. Co. v. Cobb*, 100 Ala. 228; *Reid v. Bank of Mobile*, 70 Ala. 199; *In re Tallassee Mfg. Co.*, 64 Ala. 567; *Roberts v.*

[Carpenter v. Greene County.]

*Bolles*, 101 U. S. 119; *Com. v. Alleghany Co.*, 37 Pa. St. 237.

The special act, relied on by the defendant, did not repeal or amend the general law under which the bonds were issued and hence the bonds, issued after a majority vote, in favor of the subscription were always good.—*Clay Co. v. Society for Savings*, 104 U. S. 579.

3. But if the bonds in their inception were invalid, because not supported by a prior two-thirds vote of the electors voting at the election, complete validity was imparted to them by the two legislative acts of ratification introduced in evidence by the plaintiff. Ratification is equivalent to original authority.—*Lockhart v. City of Troy*, 48 Ala. 579; *McKenzie v. Gordon*, 68 Ala. 442; *Gen. Ag. & M. Assn. v. Ins. Co.*, 70 Ala. 120; *State ex rel. Sanche v. Webb*, 110 Ala. 214; *Kenosha v. Lawson*, 9 Wallace, 477; *St. Joseph Township v. Rogers*, 16 Wallace, 644; *Thompson v. Perrine*, 103 U. S. 806; *Grenada Co. v. Brogden*, 112 U. S. 806; *Read v. Plattsmouth*, 107 U. S. 568; *Utter v. Franklin*, (U. S. S. C.), decided Jan. 3, 1899.

4. The Legislature of Alabama had authority to authorize the issuance of the bonds, upon and after a majority vote, as provided by the act of December 31, 1868, under which the bonds were issued. This legislation has been expressly upheld by the courts.—*Ex parte R. R. Co.*, 45 Ala. 696; *Lockhart v. Troy*, 48 Ala. 579; *Comrs. of Limestone Co. v. Rather*, 48 Ala. 433; *Greene County v. Daniel*, 102 U. S. 187; *Chambers Co. v. Crews*, 21 Wallace, 317.

5. The alleged statements and promises of General Forrest furnish no defense to the action.—*Greene County v. Daniel*, 102 U. S. 187. It is settled in Alabama that representations by the agent of a railroad company, soliciting subscriptions to stock, as to its intended location, etc., are but the mere expressions of an opinion and neither constitute fraud nor are available as a defense to an action on a subscription for stock made on the faith of them, unless known by the agent to be false and made by him with intent to deceive.—*Montg. So. Ry. Co. v. Matthews*, 77 Ala. 357; *Birmingham W. & E. Co. v. Elyton Land Co.*, 93 Ala. 549; *Joseph v. Decatur L. I. & F. Co.*, 102 Ala. 346.

[Carpenter v. Greene County.]

6. Even if it had been shown (which it was not) that certificates of stock were not delivered to the county treasurer, this would have constituted no defense to the action. Stock certificates are only evidences of ownership, and manual subscription on the books of the company, and the issue of stock certificates are not essential to entitle a county to stock, or to bind it to pay its bonds issued therefor.—*Cass County v. Gillett*, 100 U. S. 585; *Bates County v. Winters*, 112 U. S. 325; *Nugent v. Putnam County*, 19 Wallace, 241; *Moultrie v. Sav. Bank*, 92 U. S. 631.

7. Proof of possession by Moses established presumptively that he was a holder for value, before maturity without notice.—*Chambers County v. Clews*, 21 Wallace, 317; hence Carpenter, his successor, is also a *bona fide* holder, and has all the privileges Moses would have enjoyed in a suit by him; although he did not pay value.—*McClure v. Oxford Township*, 94 U. S. 429; *Montclair v. Ramsdell*, 107 U. S. 147. As against such innocent holder the declaration in the face of the bond is conclusive evidence that all prerequisites required by the law had been complied with.—*Clay County v. Society for Savings*, 104 U. S. 579; *Moran v. Miami Co.*, 2 Black. 722; *Knox County v. Aspinwall*, 21 How. 539; *Coloma v. Eaves*, 92 U. S. 484; *Evansville v. Donnett*, 161 U. S. 434.

ED. DEGRAFFENRIED and ROBERT EVINS, *contra*.—The testimony all shows that Carpenter had not the title to the coupons sued on in this case, and that he, therefore, had no right to maintain this suit. The testimony shows that the ownership of the bonds and the coupons *really* resided in Moses, and not in *Carpenter*. While mere possession of negotiable paper might and does raise a *presumption of title*, this presumption does not arise in this case, for *the proof* shows that the bonds and coupons were in Carpenter's possession *as the agent* of Moses and not otherwise. It is clear that it was not the purpose of Moses to invest Carpenter with the *title* to the bonds. Carpenter was to receive, on the contingency of a recovery, ten per cent. Carpenter, there-

fore, had not the right to sue,—only the holder of the legal title could do that.—Code of Alabama, § 28, and authorities cited in the note thereto; *Pleasants v. Erskine*, 82 Ala. 386; *Yerby v. Sexton*, 48 Ala. 311; *Herschfelder v. Mitchell*, 54 Ala. 419; *Tilley v. Harrison*, 91 Ala. 295; *Bibb v. Hall*, 101 Ala. 79; *Rice v. Rice*, 106 Ala. 636.

. The proof, at best, simply shows that Carpenter was Moses' agent, and this is not a case in which an agent can sue. The agent, Carpenter, made no contract with Greene county of any sort.—1 Amer. & Eng. Ency. Law (2d ed.), pp. 1162, 1163, 1164, and notes and authorities there cited.

If Carpenter can maintain this suit, then an attorney into whose hands such a claim is placed for collection can also maintain a similar suit in his own name. Carpenter's contract with Moses was champertous and is void. Carpenter was to conduct the litigation in his own name and at his own expense. *Moses was to be put to no expense unless there was a recovery.* In the event of recovery Carpenter was to retain, out of the amount recovered, his attorney's fees, costs, and ten per cent. If this contract was not void, then the doctrine of champerty and maintainance has ceased to play a part in the law of Alabama.—*Bird v. Oden*, 9 Ala. 757; *Holloway v. Lowe*, 7 Porter, 488; *Gillman Sons & Co. v. Jones*, 87 Ala. 691. See further doctrine of champerty and maintenance as discussed in 5 Amer. & Eng. Ency. Law (2d ed.)

It is well settled that even a general law prescribing a rule universal as to the subject will not repeal a prior special or local law applicable to only a portion of the subject matter. The two must be deemed to stand together; the one as the general law of the State, and the other as the law of the particular case. The purpose of the general law to be carried out except as to the particular cases, as to which a different intention is manifested by the law applicable to those particular cases. Sutherland on Stat. Con., § 157; *State v. Stall*, 17 Wall. 425; *County of Cass v. Gillett*, 100 U. S. 585; *Ex parte Crow Dog*, 109 U. S. 536; *City Council v. Nat. B. & L. Assn.*, 108 Ala. 336, 343; *St. Martin v. New Orleans*, 14 La. Ann. 113.

The two statutes involved in this case must be construed together and must be read as if in the general law a proviso had been inserted, providing that no subscription should be made by any county to the stock of the Selma, Marion & Memphis Railroad Company, and bonds issued in payment unless at an election held to vote upon that question *two-thirds* of the votes cast were voted for that subscription.—*Lorimer v. Lewis*, 39 Am. Dec. 461.

There is no authority conferred by the act in this case on the commissioners court to determine that the requisite vote had been cast to authorize that body to issue the bonds, so its power to do so depended upon the existence of the requisite fact, shown by the records, and not upon its ascertainment or determination by any one, and no recitals in the bond establish that fact. *Lake County v. Graham*, 130 U. S. 674; *Coffin v. Board of Commrs.*, 57 Fed. Rep. 137.

There being no authority in the first instance for the issuance of these bonds, the next question which presents itself is, does the act of March 3, 1870, cure the defect and make the bonds binding obligations of the county? The purpose of the act was not to declare a valid election had been held, but to make one valid which was invalid, not to ratify and confirm that which was already valid and binding; no ratification and confirmation of such an act was necessary; but to give validity and binding obligation to that which without such ratification would be without such binding obligation. The bonds sued on were issued January 1, 1870, and this act was passed on the 3d of the following March. The act does not undertake to make valid any bonds theretofore issued, but only to make valid the election, and thereby to make such election an authority to thereafter issue bonds. Cases before the Supreme Court of the United States involving this right of subsequent legislative ratification of acts of this character have been of two classes: one where the acts expressly ratified a prior issue of bonds, and the other where they ratified a prior election and made it the authority for a subsequent issue of bonds. No case can be found

where bonds issued prior to the passage of such an act have been held valid unless the purpose of the Legislature to do so has been clearly expressed. Courts may hold that it has been done, but will do so only when, to use the language of that court, "the intention of the Legislature to legalize clearly appears."—*Campbell v. Kenosha,* 5 Wall. 194; *Lee v. Rogers,* 6 Wall. 181; *Combs v. Thayer,* 94 U. S. 631; *Bank v. Yankton,* 101 U. S. 129; *Jonesboro v. C. & St. L. R. Co.,* 110 U. S. 192.

In construing statutes to get at the intention of the Legislature we must look not only at the statutes in *pari materia,* but to other statutes on cognate subjects. This is the rule in any case; there is the stronger reason for it where the statutes are passed so nearly at the same time as in this case.—Sutherland on Stat. Con., § 284; *Smith v. The People.* 47 N. Y. 330; *Lehman v. Robinson.* 59 Ala. 219, 234.

Acts which amount to mere irregularities may be cured by subsequent statutes, but subsequent statutes will not be construed as validating acts done without authority or jurisdiction to do them, even if they can constitutionally cure such defects, unless the intention to give those acts validity is clear beyond a reasonable doubt.—Cooley on Con. Lim., pp. 370-71; *Trammell v. Pennington,* 48 Ala. 673, 686.

To construe the statute as validating both the election and the acts which may have been done by the court, would be in direct opposition to a fundamental rule of statutory construction which forbids any statute being given a retroactive effect beyond what it plainly and clearly appears from the language used, was the intention of the Legislature. The Legislature might very well have intended to make the past action of the people authority for the future action of the court, when it did not intend to ratify the prior action of the court, done without authority; even if they knew of such prior action, which it does not appear here they did know.—Sutherland on Stat. Con.. §§ 463-64; Potter's Dwarries on Statutes, pp. 162-67; *Goshen v. Stonington,* 10 Am. Dec. 121; *Dash v. VanKleck,* 5 Am. Dec. 291.

40

[Carpenter v. Greene County.]

If the judicial proceeding was void, for *want of jurisdiction*, then the defect cannot be cured by subsequent legislation. It is only in cases where the defects are not jurisdictional that a cure can be effected by subsequent legislation.—3 Amer. & Eng. Encyc. Law, p. 760, note 3 (old ed.) ; *Commissioners v. Thayer*, 94 U. S. 631. A vote of *two-thirds* of the voters at the election as required under the act incorporating the Selma, Marion & Memphis Railroad Company was jurisdictional. Without such vote the court was without authority to act.—*Commissioners v. Thayer*, 94 U. S. 631. A curative act can never give validity to transactions invalid, even for omissions or acts not jurisdictional unless there is an equity to support such curative act. Curative acts are upheld by the courts only upon the ground that equity and good conscience justify and require the passage of such acts.—*New Orleans v. Clarke*, 95 U. S. 644.

The adoption by the Legislature of the acts ratifying the election in Greene county is a legislative recognition of the insufficiency of the election, and is a legislative effort to give validity to it; and the statements of Forrest above referred to are not the mere loose expressions of opinion referred to by the courts in the following cases : *Greene County v. Daniel*, 102 U. S. 187; *Montgomery Southern R. R. Co. v. Mathews*, 77 Ala. 357 ; *Birmingham W. & E. Co. v. Elyton Land Co.*, 93 Ala. 549; *Joseph v. Decatur L. I. & F. Co.*, 102 Ala. 346.

TYSON, J.—On December 31st, 1868, the General Assembly enacted a general statute entitled "An act to authorize the several counties and towns and cities of the State of Alabama to subscribe to the capital stock of such railroads throughout the State as they may deem most conducive to their respective interests." Acts, 1868, pp. 514-529. By the first section of the act, it was provided that counties situated upon or adjacent to the main or branch line of a railroad of the State should be authorized to subscribe to its capital stock. It required that the company, acting through its president and a majority of its directors, should first sub-

[Carpenter v. Greene County.]

mit to the court of county commissioners of the county
whose subscription was sought, a proposition that it
should so subscribe for a named amount of stock at a
stated price and should pay for the same in bonds de-
scribed in the proposition. By the second, third, fourth
and fifth sections of the act, an election was
provided for, at which the question of subscrip-
tion or no subscription should be submitted to
the qualified electors of the county. The elec-
tion, it was provided, shall be held under the
direction of the court of county commissioners,
within a given time and after a prescribed notice,
and should be governed by the laws relating to other
elections except as changed by the act. By the fifth
section, returns of the election were required to be made
"by the proper officer to the judge of probate of said
county. whose duty it shall be to receive, count, esti-
mate and publish the vote thereof" within a stated time,
and provision was made for similar action by the clerk
of the circuit court in the event of disability on the
part of the probate judge. Section six provides, that if
it is found that a *majority* of the qualified electors vot-
ing at the election shall have voted in favor of subscrip-
tion, then upon the announcement of the vote as pro-
vided, the proposition shall be deemed and held to be
accepted, and the court of county commissioners shall
be authorized to subscribe for the stock and to issue
bonds of the county in the manner and to the amount
set forth in the proposition, which shall be delivered
to the railroad company in payment of the subscription.
The bonds. it was provided, should not run less than
ten nor more than twenty years, with interest payable
semi-annually. The seventh, eighth, and ninth sec-
tions relate to taxation for the payment of the interest,
limiting the rate of taxation to one per centum on the
value of real and personal property in any one year.
It is unnecessary to notice the remaining provisions of
the act as they relate chiefly to subscriptions by cities
and towns.

On the same day the General Assembly passed an-
other act entitled "An act to amend and revise the gen-
eral acts incorporating the Cahaba, Marion & Greens-

[Carpenter v. Greene County.]

boro Railroad Company, and to change the name and style of said company."—Acts, 1868, p. 566. After reciting in a preamble the several former acts revised, the act proceeds to incorporate the new company, prescribe its capital stock, etc. The sections of this act material in the present case are four and five. By section four it is provided: "That the courts of county commissioners of the respective counties *through which* the road shall pass, are respectively hereby authorized and empowered to make subscriptions to the capital stock of said company, in such sum or sums, and payable in such amount, and at such times as said court may deemed proper, and each of said courts is further authorized to issue bonds on the faith of the county in such sums as may be deemed best, payable at such time, (bearing not more than 8 per cent. interest per annum, as said court may determine), and may sell said bonds to raise the money to pay the stock subscribed, or may transfer them on such terms as may be agreed upon with said company, in payment of the stock subscribed; and said courts separately are hereby authorized and empowered to levy a tax on the lands of their respective counties, to pay the interest accruing on said bonds, and to pay the bonds at maturity, and these provisions shall be deemed irrepealable, without the consent of the bondholders, until paid." Section five authorized the municipal authorities of any town or county through which said road may run to subscribe to the capital stock of said road with the following proviso: Provided, "That before the said commissioners' court shall proceed to make any subscription of stock to said railroad, they shall submit the question to the electors of said county, by giving thirty days notice of an election to be held for that purpose, and the amount of stock proposed by them to be subscribed; and if two-thirds shall vote in favor thereof, then said subscription shall be made and *not otherwise*," etc.

On the 6th day of August, 1869, the Selma, Marion & Memphis Railroad Company, through its president, acting under authority conferred by its board of directors, presented its proposition to the court of county

commissioners of Greene county, inviting a subscription to its capital stock by the county in the sum of eighty thousand dollars, payable in bonds. Said proposition recited that it was made under and in pursuance of the authority conferred by the general act of December 31st, 1868, and requested that it be submitted to the qualified electors of the county under that act. An election was thereupon ordered by the commissioners' court and held on the 14th day of September, 1869, at which a majority, but less than two-thirds, of the electors participating, voted in favor of the proposition. The returns showing these facts, were made to the commissioners' court, and that court at a term held in December, 1869, subscribed to the stock as proposed and directed that the bonds be executed and delivered to the railroad company. Thereupon the bonds were so issued and delivered.

The bonds are in the ordinary commercial form with interest coupons attached. They do not state expressly under what act they were issued, the recitals upon the subject and relative to the election being as follows: "This bond is issued under and pursuant to an order of the court of county commissioners of said Greene county, made under authority of the constitution of the State of Alabama, and the laws of the Legislature of the State of Alabama, authorized by a vote of the people of said county at a special election held for the purpose on the 14th day of September, 1869." The bonds were signed by the probate judge, describing himself as "Judge of Probate Court and *ex-officio*, the presiding officer, Court of County Commissioners, Greene Co., Alabama."

This action was brought against the county to recover upon interest coupons attached to some of these bonds, and the trial was had under an agreement of counsel as to pleadings broad enough to cover the question presented in the court below and in this court. The foregoing facts were shown in evidence, and there was also proof of certain promises made by the officers of the railroad company to citizens of Greene county prior to the subscription, for the purpose of inducing a favorable vote on the subscription which, it is claimed, were

[Carpenter v. Greene County.]

never fulfilled. We do not think that a breach of those promises could affect the bonds issued under the subscription actually made. The subscription having been actually made and the bonds issued and delivered in pursuance of the subscription, on passing into the hands of purchasers for value, renders all such evidence unavailable for any purpose in a suit upon the bonds, whatever may have been the right of the county to have rescinded the contract of subscription before the bonds were issued or to have maintained an action for a breach of these promises against the railroad company.

A preliminary question is presented as to the right of the plaintiff to maintain this suit. We think the evidence shows that he has such an interest in the coupons as authorizes him to do so. It shows that he had the right to do with the bonds and coupons as he pleased. He could give any acquittance upon any consideration he chose. And the fact that he might have to account for a part of the proceeds to another person, would not defeat his right to sue. Payment could have been efficaciously made to him and he can discharge the defendant from further liability on them.

The bonds and coupons required no endorsement to pass the legal title to him. As they were given to the plaintiff to do as he pleased with in the way of enforcing payment, in which he had an interest, he was entitled to maintain the action.—*Berney v. Steiner Bros.,* 108 Ala. 111; *Rice v. Rice,* 106 Ala. 636; *Bibb v. Hall,* 101 Ala. 79; *Yerby v. Sexton,* 48 Ala. 311.

Two curative acts passed by the General Assembly were introduced in evidence, the first purporting to legalize elections and other proceedings had under the general law of December 31st, 1868; and the other purporting to validate certain elections, including the election held in Greene county on the 14th day of September, 1869. The title of the latter act is: "An act to ratify the election held in the towns of Greensboro and Eutaw and in the counties of Hale, Greene and Pickens to subscribe stock to the Selma, Marion & Memphis Railroad Company," which was approved March 3d, 1870. In so far as it applies to said election its language

is: "That the election held in Greene county on the
fourteenth day of September, 1869, at which election
the qualified electors of said county, by a vote of ten
hundred and eleven (1011) votes for 'subscription' and
five hundred and fifty (550) votes for 'no subscription,'
voted to subscribe eighty thousand ($80,000) dollars
of stock in the bonds of said county of Greene to the
Selma, Marion & Memphis Railroad Company,   *   *   *
said election is   *   *   * hereby ratified and made
valid in all respects and particulars."—Acts, 1869-70,
p. 305. The important question is whether or not the
election could be held and the subscription made and
the bonds issued under the general law. It is insisted
that the special act amending and revising the charter
of the Cahaba, Marion & Greensboro Railroad Company,
giving the courts of county commissioners of the respec-
tive counties through which the road *shall pass* author-
ity to subscribe to the capital stock of the said railroad,
repealed the general law in the counties embraced by
the special act. If it appeared that the special act
necessarily covered and related to the county of Greene,
and if it further appeared that the subscription author-
ized by the special act was the same in all substantial
respects, as that authorized by the general act, the con-
tention would be sound, but the county of Greene is
not mentioned in the special act, and it is shown that
said railroad did not pass through or into said county.
The authority to subscribe under the special act was
only extended to the courts of county commissioners of
the counties "through which the roads shall pass." But
independent of this, there is no good reason why both
acts may not apply; and it is a well settled rule of con-
struction of statutes, that one does not repeal another
by implication if both may have a distinct field of ope-
ration.—Sutherland on Stat. Con., §§ 157, 158; *Max-
well v. The State*, 89 Ala. 150; *County of Cass v. Gil-
lette*, 100 U. S. 585. Under the general act, the bonds
subscribed for, which were to run not less than ten nor
more than twenty years, were to be delivered to the
railroad company in payment of the subscription, and
a majority of voters was sufficient to determine the sub-
scription and the tax to pay for the bonds issued under

[Carpenter v. Greene County.]

the subscription is to be levied, as other State and county taxes, upon real and personal property; but by the seventeenth section thereof, it is provided that the persons who pay the taxes on or for the bonds issued own the stock bought with the bonds in the proportion that they severally pay the taxes. A subscription under the general law was, therefore, in effect, a subscription by the several taxpayers of the county and they became the owners of the stock. Under the special act, the bonds subscribed for by the county may be sold by it and the proceeds used to pay for the stock subscribed, or they may be transferred on such terms as may be agreed upon with the company and there is no limitation upon the time they are to run. Under this act lands only are to be taxed for the payment of the bonds and there is no provision whereby the taxpayers, in any event, become the owners of the stock—the county as a municipality is the owner.

It is evident that the General Assembly might very well intend or purpose that the general taxpayers of the county might subscribe as provided under the general act and at the same time have a more restricted law under the special act by which the special counties benefitted by the road, by its passing through their borders, might subscribe upon a two-thirds vote and a tax upon the land only. There is no absolute repugnance between the two acts and, therefore, as the general act was operative, there is no reason why the subscription might not have been made as it was made. This construction gives a field of operation for both. *County of Clay v. Society for Savings*, 104 U. S. 579.

It was entirely within the competency of the Legislature to cure any irregularity in the conduct of the election or the issuance of the bonds.—*Utter v. Franklin*, 172 U. S. 416; *Grenada County v. Brogden*, 112 U. S. 261; *State ex rel. etc. v. Webb*, 110 Ala. 214.; *Cent. A. & Mech. Asso. v. Ins. Co.*, 70 Ala. 120; *McKenzie v. Gordon*, 68 Ala. 442. If there was any irregularity whatever in respect of the conduct of the election or the issuance of the bonds, it was cured by the act approved March 1, 1870, (Acts, 1869-70, p. 286), legalizing and

[Randall *et al.* v. Wadsworth, Guardian.]

confirming all acts and things theretofore done and performed in this State for railroad purposes in substantial compliance with the provisions of the general act of December 31, 1868, above mentioned.

There does not appear, however, to have been any irregularity in the issuance of these bonds, and they are binding obligations upon the defendant.—*County of Clay v. Society for Savings, supra; Greene County v. Daniel,* 102 U. S. 187; *Chambers County v. Clews,* 21 Wall. 317; *Commissioners of Limestone County v. Rather,* 48 Ala. 433.

Reversed and remanded.